STRICK CORPORATION

v.

**A. J. F. WAREHOUSE DISTRIBUTORS, INC.**

Civ. A. No. 81–2486.

United States District Court,
E. D. Pennsylvania.

Feb. 25, 1982.

Robert A. Swift, Philadelphia, Pa., for plaintiff.

Daniel Segal, Philadelphia, Pa., for defendant.

## OPINION

### LOUIS H. POLLAK, District Judge.

This is a diversity action in which plaintiff, a Pennsylvania corporation, seeks to recover for an alleged breach of a contract for the sale of trailer-trucks. The defendant, A.J.F. Warehouse Distributors, Inc., has moved to dismiss for lack of personal jurisdiction or, in the alternative, for improper venue.

Service of process on A.J.F. was made pursuant to Federal Rules of Civil Procedure 4(e) which provides that a party may be served in the manner prescribed by the state in which the district court sits. Thus, A.J.F.'s motion to dismiss for lack of *in personam* jurisdiction must be tested against Pennsylvania's long-arm statute, 42 Pa.C.S.A. § 5301 *et seq. See Spelling-Goldberg Prods. v. Bodek & Rhodes,* 452 F.Supp. 452, 453 (E.D.Pa.1978). *Cf. Selman v. Harvard Medical School,* 494 F.Supp. 603, 610 (S.D.N.Y.), *aff'd,* 636 F.2d 1204 (2d Cir. 1980) (applying New York statute).

▮ Once the court's *in personam* jurisdiction is challenged by the defendant, the plaintiff has the ultimate burden of proving that the non-resident defendant's activities in the forum state are sufficient to bring it within the reach of the court's jurisdiction. *See Boysen v. Treadway Inn of Lake Harmony, Inc.,* 53 F.R.D. 96, 98 (E.D.Pa.1971), *aff'd,* 463 F.2d 247 (3d Cir. 1972). *See also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). In general, a plaintiff must shoulder the burden of alleging facts sufficient to support a finding of jurisdiction and of supporting such allegations with appropriate affidavits or documents if jurisdiction is challenged. *See Local 336, American Federation of Musicians v. Bonatz,* 475 F.2d 433, 437 (3d Cir. 1973); *Boysen v. Treadway Inn, supra,* at 98; *Selman v. Harvard Medical School, supra,* at 610.

Following defendant's initial motion to dismiss, I ordered defendant to respond to plaintiff's interrogatories in order to provide Strick with the opportunity to prove its jurisdictional allegations. Since then the parties have submitted affidavits and discovery materials as well as extensively briefing the issues raised by A.J.F.'s motion. From a review of A.J.F.'s answers to

plaintiff's interrogatories, the documentary exhibits submitted by both sides, and the affidavits of Larry A. Hoffman, Vice President and Controller of A.J.F., and Joseph Puchino, Strick's Vice President of Sales, the following facts are apparent.

Plaintiff Strick is a Pennsylvania corporation with its principal place of business in Fairless Hills, Pennsylvania. Its chief enterprise is the manufacture and sale of transportation equipment, including trailer trucks. Defendant A.J.F. is an Illinois corporation with its principal place of business in St. Louis, Missouri. It is principally engaged in leasing transportation equipment to various trucking firms and it also provides warehouse facilities and other shipping services. As part of its truck-leasing business, AJF maintains a number of offices in various states. While A.J.F. does not now maintain any agents or offices in Pennsylvania and is not registered to do business here, it did operate an office in Pennsylvania from 1972 to 1976. The company also continues to have some formal contacts with the Commonwealth: it currently leases thirty-three (33) trailers to U.P.S. offices located in Pennsylvania; records show that it has made over one hundred telephone calls into the state during 1981; and, it is a customer of J. & S. Distribution Specialists, a Philadelphia hauling company that takes shipments initially consolidated by A.J.F.'s Shippers Agent Division, and delivers them to their final destination.

In a series of transactions from 1973 to 1980, A.J.F. has purchased a large number of trailer trucks from Strick. As part of this continuing business relationship, in late 1978 or early 1979, A.J.F.'s Vice President and Controller, Larry Hoffman, visited Strick's Danville, Pennsylvania, plant on an information-gathering tour to inspect trailer trucks manufactured by Strick. During this visit he was accompanied by Strick's Vice President of Sales, Joseph Puchino, and Al Bauer, a Strick sales representative based in Dallas, Texas. Again as part of this continuing relationship, the parties entered two sales agreements in 1979 and 1980—the alleged breach of which forms the basis of this litigation.

Both the February 23, 1979 and December 12, 1980 agreements—which used Strick sales-order form contracts—were signed by Hoffman in St. Louis and were apparently countersigned by Bauer either in St. Louis or Dallas. The first contract recited that delivery would be made in Memphis, Tennessee and the second in Kansas City, Missouri. Both contracts contain hand-written specifications for the type and size of tires, and for various other fixtures such as lights and vents. The list of conditions set out on the form contract makes no reference to Pennsylvania; however, paragraph 10 states: "This agreement and the relationship of the parties shall be governed by and interpreted in accordance with the laws of the state in which the office of Strick Corporation responsible for its performance is located." The contract does not name such an office, nor does it indicate where the trailer trucks will be manufactured.

The two purchase orders signed by Hoffman were accepted by Puchino at Strick's headquarters in Pennsylvania. The invoices for these sales direct A.J.F. to make payment to Strick's office in Chicago. Although it is not clear from the contracts, according to Puchino's affidavit, major assembly of the trailer trucks purchased by A.J.F. was completed in New York, and the installation of the specified tires took place in Pennsylvania.

Despite this wealth of information which the parties have collected with commendable diligence, no obvious conclusions spring from these facts. Some details of the contractual relationship suggest that A.J.F.'s connection with Pennsylvania forms an adequate basis for an exercise of jurisdiction over it, while others imply a different result. Indeed, the jurisdictional significance of the facts appears to be in equipoise. Nevertheless, for the reasons that follow, I am persuaded that A.J.F. has sufficient minimum contacts with the Commonwealth so that requiring it to defend itself here would not offend due process.

I. *Personal Jurisdiction*

■ Generally speaking, a trial court seeking to determine whether it may consti-

tutionally exercise *in personam* jurisdiction over a non-resident defendant can derive only limited help from previously decided cases, since the constitutional inquiry is so often shaped by particular facts that the conclusions drawn from one setting are rarely transferable to another. This seems especially true with respect to the mixed issues of law-and-fact which is the central question in this case—whether jurisdiction may be asserted over a non-resident corporation that has purchased goods from a resident plaintiff. But that central question is by no means unique to this case; to the contrary, as Justice White recently observed in dissenting from a denial of certiorari, it is a question which has "deeply divided the federal and State courts" and is one of "considerable importance to contractual dealings between purchasers and sellers located in different States." *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

The Pennsylvania long-arm statute contemplates that a court may exercise *in personam* jurisdiction on essentially two bases; this statutory framework tracks the two jurisdictional theories defined by the Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A finding of jurisdiction under the first—section 5301—turns on whether a particular defendant can be said to be "present" in the state either because it is a resident, has consented to be sued here, or, in the case of a corporation or partnership, maintains "a continuous and systematic part of its general business" in Pennsylvania. 42 Pa.C.S.A. § 5301(a)(2)(iii). Section 5301(b) further provides that when jurisdiction is based on that section, causes of action unrelated to defendant's forum activities may be asserted against it. This statutory provision simply follows the Supreme Court's description in *International Shoe* of the jurisdictional significance of a corporation's presence in the forum:

> [T]he terms "present" or "presence" are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be suffi-

cient to satisfy the demands of due process.... "Presence" in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on.... [In addition] there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.

*Id.* at 316–18, 66 S.Ct. at 158–159 (citations omitted). *See also Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446–48, 72 S.Ct. 413, 418–419, 96 L.Ed. 485 (1952) (non-resident defendant's activities in forum sufficiently substantial and continuous to permit exercise of jurisdiction to adjudicate a cause of action not arising from those activities); *Bork v. Mills*, 458 Pa. 228, 232, 329 A.2d 247, 249 (1974). Thus, even though a cause of action arises from activities of a defendant which are unrelated to the forum, a court may entertain suits against that defendant because the presence of the factors listed in section 5301 demonstrates a sufficient connection with the state to satisfy due process. In effect, this simply means that the scrutiny of whether an exercise of jurisdiction is fair and reasonable must be more demanding when the cause of action does not arise from the defendant's activities in the forum state.

By contrast, the second jurisdictional provision—section 5322—provides that jurisdiction over non-resident corporate defendants may be "based on the most minimum contact with this commonwealth allowed under the Constitution of the United States," 42 Pa.C.S.A. § 5322(b), but that such an exercise of jurisdiction must be confined to causes of action which arise from these contacts with the state. 42 C.S.A. § 5322(c). *Cf. Hanson v. Denkla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958) (no jurisdiction under minimum contact analysis because "the cause of action in this case is not one that arises out of an act

done or transaction consummated in the forum state"). As the Third Circuit has recently explained:

> When personal jurisdiction over a non-resident defendant is asserted on a basis other than consent, physical presence, or doing business [i.e., the section 5301 factors], the claim must arise from a specific forum-related act. Minimum contact analysis is inappropriate where defendant's forum activities do not give rise to the claim. Instead, when pressing a non-forum-related claim, plaintiff must demonstrate that the defendant maintained "continuous and substantial" forum affiliation.

*Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir. 1981).

In this case, Strick has sought to establish jurisdiction under either section 5301(a)(2)(iii) by asserting that A.J.F. has maintained a "continuous and systematic" part of its business in Pennsylvania, or, in the alternative, under section 5322(a)(4) and 5322(b) by contending that defendant's entering a sales agreement with a Pennsylvania corporation, its breach of that agreement, and the fact that such a breach would cause reasonably foreseeable economic harm in Pennsylvania are sufficient to satisfy the minimum contacts test. Because it poses fewer difficulties, I will first address Strick's contention that jurisdiction may be based on section 5301, and then turn to the knottier question whether Strick has shown that A.J.F.'s contacts with Pennsylvania are sufficient to establish jurisdiction under the minimum contacts analysis set forth in *International Shoe* and its progeny.

A. *"Continuous and Systematic" Analysis* :

█ Strick points to several contacts between A.J.F. and Pennsylvania which are unrelated to this litigation to support its argument that jurisdiction may be established under section 5301. These contacts include leases AJF has entered with Pennsylvania companies, A.J.F.'s maintenance of an office here from 1972 to 1976, A.J.F.'s right to repossess its trucks in Pennsylvania, phone calls into Pennsylvania in 1981; A.J.F.'s advertisements in national industry journals which circulate in Pennsylvania, and A.J.F.'s relationship with J. & S. Distributors Specialists, Inc. Despite their number, none of these asserted contacts persuades me that A.J.F. maintains a continuous and systematic part of its business in Pennsylvania.

Generally, this type of jurisdictional basis is found where a non-resident defendant makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market. *See generally Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir. 1981); *Galaxy Int'l, Inc. v. White Stores, Inc.*, 88 F.R.D. 311, 324–25 (W.D.Pa.1980); *Garfield v. Homowack Lodge*, 249 Pa.Super. 392, 397–98, 378 A.2d 351, 354–55 (1977). Rather than establishing the regularity of A.J.F.'s business undertakings in Pennsylvania, these facts suggest a relatively discontinuous relationship with the state. Plaintiff has failed to show that A.J.F. has specifically targeted the Pennsylvania market nor has it demonstrated that a significant portion of A.J.F.'s revenues derive from activities in the state. Compared with the bulk of A.J.F.'s truck leasing business, which is apparently national in scope, the few leases remaining with U.P.S. appear to be insubstantial. In addition, the mere fact that A.J.F. advertises in national industry journals which circulate in Pennsylvania, can not provide a basis for jurisdiction. *Cf. Garfield v. Homowack Lodge, supra.* Moreover, A.J.F.'s relationship with J. & S. Distributors Specialists simply facilitates a part of its shipping business, but it is worth noting that A.J.F. is a customer of J. & S. and does not earn revenues directly from Pennsylvania firms as a result of this arrangement. Therefore, jurisdiction may not be asserted over A.J.F. pursuant to section 5301 of the Pennsylvania long-arm statute.

B. *"Minimum Contacts" Analysis:*

In the alternative, plaintiff contends that jurisdiction may be based on a showing of minimum contacts between A.J.F. and Pennsylvania. Under this standard, plaintiff points to the contacts mentioned above,

but more specifically asserts that this cause of action arises from A.J.F.'s activities in Pennsylvania—namely, the breach of a contract it entered with a Pennsylvania corporation. Plaintiff also argues that since an A.J.F. officer—Larry Hoffman—visited one of Strick's plants in Pennsylvania to inspect the type of trailer trucks which were ultimately ordered by A.J.F., that Strick accepted the sales contract following defendant's purchase order in Pennsylvania, and that the performance of the contract occurred partly in Pennsylvania, A.J.F. may be subjected to suit in the state.

As the Supreme Court has recently emphasized, the concept of minimum contacts serves two purposes: first, it "protects the defendant against the burdens of litigating in a distant or inconvenient forum", and second, it "ensure[s] that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980). The determination of whether this "minimum contacts" test is satisfied cannot be made by application of a mechanical rule, but rather must be resolved on a case-by-case basis.

In analyzing the first consideration— whether an exercise of jurisdiction is fair— the Court has made clear that certain factors deserve evaluation: (1) has the defendant purposefully availed itself of the privilege of conducting activities within the forum state? *see Hanson v. Denkla, supra,* 357 U.S. at 251, 78 S.Ct. at 1238; (2) did the cause of action arise from the defendant's activities within the state? *see McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); (3) were the acts of the defendant in the forum state substantial enough to make the exercise of jurisdiction over it reasonable? *see International Shoe Co. v. Washington, supra,* 326 U.S. at 316, 66 S.Ct. at 158. In large measure, the consideration of these factors is designed to test whether a non-resident defendant had fair notice that he could be subject to suit in the forum. Put another way, the "defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567.

The gist of the dispute between plaintiff and defendant in this case centers on the first of these factors—did defendant A.J.F. purposefully avail itself of the privilege of conducting business activities within Pennsylvania? To support its argument that its conduct is not sufficient to satisfy this first consideration A.J.F. relies heavily on the recent decision by the Seventh Circuit in *Lakeside Bridge and Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596 (7th Cir. 1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). In that case, the Seventh Circuit cited the following language from *Hanson v. Denkla, supra,* 357 U.S. at 253, 78 S.Ct. at 1239:

> The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Lakeside Bridge, supra,* 597 F.2d at 600. Relying on that pronouncement, the *Lakeside* court held that a non-resident purchaser could not be subjected to suit in the forum where the plaintiff-seller resides, and explained that:

> Although [the non-resident defendant purchaser] in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left [the plaintiff seller] in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally. [The defendant's] belief, which we may assume existed, that [plaintiff] would choose to perform

its contractual obligations in Wisconsin does not constitute an invocation of the benefits and protections of Wisconsin's laws; [defendant] did not "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Therefore the courts of Wisconsin no more had jurisdiction over [defendant] than would the courts of England or Taiwan if [plaintiff] had chosen to have the goods manufactured in either of those places.

*Id.* at 603 (citations omitted).

In response, plaintiff Strick points to a decision of the Pennsylvania Superior Court, which addresses similar facts and also cites the *Hanson v. Denkla* language. However, the Pennsylvania court reached the opposite conclusion:

This Court has no difficulty in finding that the first element relating to the purposeful doing of an act within the Commonwealth has been satisfied. The defendant voluntarily entered into a contract with a Pennsylvania corporation which contract was to be governed by Pennsylvania law. When obligations entered into by a foreign corporation have a realistic economic impact on the commerce of this Commonwealth and where the defendant should reasonably have foreseen that the transaction would have consequences in this Commonwealth the defendant has purposefully availed itself of the privilege of acting within the Commonwealth.

*Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19–20, 323 A.2d 11, 15 (1974) (footnotes and citations omitted). *See also Controlled Metals, Inc. v. Non-Ferrous Int'l Corp.,* 410 F.Supp. 339, 343 (E.D.Pa.1976); *Watson McDaniel Co. v. National Pump & Control, Inc.,* 493 F.Supp. 18, 21 (E.D.Pa.1979); *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933, 936–37 (10th Cir. 1977); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494–99 (5th Cir. 1974).

▪ As I suggested at the outset of this section of the opinion and as these decisions reflect, courts have not developed a coherent and consistent view of whether a nonresident purchaser may be sued by a resident seller solely on the basis of the defendant's act of entering a sales agreement with the forum-based seller. And while the "purposefully availing" language from the Court's opinion in *Hanson v. Denkla,* is compelling, it should not be given talismanic significance. Indeed, careful analysis may be hindered if courts, in searching for some verbally satisfying formula, lose sight of the real animating concerns that underlay the Court's decision in *Hanson v. Denkla.* A proper analysis should focus, as in fact it did in *Hanson* and in *Lakeside Bridge,* on whether a *plaintiff's* unilateral conduct actually generates all of the significant contacts between the litigation and the forum, and on the desire to protect a wholly passive defendant from being forced to appear in an inconvenient forum on the basis of contacts it did not initiate.

▪ At the outset, it is clear that a straightforward rule which permits a court to assert jurisdiction over any non-resident defendant that purchases goods from a resident would be constitutionally unacceptable. Instead, a review of the cases suggests that the following factors must be carefully considered: (1) the character of the pre-contract negotiations; (2) the location of those negotiations; (3) the terms of the sales agreement; and (4) the type of goods sold. *See generally Empire Abrasive Equipment v. H. H. Watson, Inc.,* 567 F.2d 554, 558–59 (3d Cir. 1977). These factors are significant in gauging both the weight that should attach to a defendant's "act" of entering a contract with a resident plaintiff and the extent to which a defendant may have been able reasonably to foresee that his breach of that contract would subject him to suit in the forum. Careful appraisal of these factors will help to place a particular defendant at the appropriate point along a scale running from virtually no forum contacts except for the passive purchase of relatively simple items to more explicit forum contacts in which the sale of complex industrial equipment is initiated by the defendant.

■ The character of the negotiations which led to the sale must be examined because this may shed light on the extent to which the defendant's contracting with the resident seller involved a "purposeful" activity. In this regard, courts should look at whether the non-resident defendant initiated the deal, attempted to alter the terms of the contract, or conducted significant negotiations with the plaintiff. As the Sixth Circuit in *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 233 (6th Cir. 1972), explained:

> To the extent the buyer vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears.

*See generally Controlled Metals, Inc. v. Non-Ferrous Int'l Corp.*, 410 F.Supp. 339, 343 (E.D.Pa.1976) (attempts to re-negotiate contract terms); *Watson McDaniel Co. v. National Pump & Control, Inc.*, 493 F.Supp. 18, 20–21 (E.D.Pa.1979) (goods were custom-made pursuant to defendant buyer's specifications); *Tamaqua Cable Prods. Corp. v. Dunlap Electronics, Inc.*, 531 F.Supp. 388 (E.D.Pa.1982). This factor also appeared to be decisive in *Lakeside Bridge, supra*, since the court in ruling that Wisconsin was not an appropriate forum noted that the Wisconsin plaintiff had visited the defendant's home offices in West Virginia and proposed the initial terms which the defendant simply ratified by mailing the purchase order back to plaintiff in Wisconsin. *Id.* at 598.

Second, the place of negotiations must be taken into consideration since the fact that the buyer negotiates the contract while visiting the forum state or makes a substantial number of telephone calls or mailings into the forum during the negotiation stage is also relevant to assessing whether the buyer has purposefully availed itself of the opportunity of conducting activities in the forum. *See Sterling Industrial Corp. v. Telephone, Inc.*, 484 F.Supp. 1294, 1298–99 (W.D.Mich.1980) (applying Pennsylvania law; substantial number of orders initiated by defendant placed into forum by telephone); *DiCesare-Engler Productions, Inc. v. Mainman, Ltd.*, 81 F.R.D. 703 (W.D.Pa. 1979). *Cf. Gagner v. Parsons & Whittemore, Inc.*, 450 F.Supp. 1093 (E.D.Pa.1978) (negotiations took place in New York; therefore, no jurisdiction in Pennsylvania); *Pennsylvania Mfrs. Ass'n Ins. Co. v. Township of Gloucester*, 493 F.Supp. 1047, 1049 (E.D.Pa.1980).

Third, the terms of the contract must be examined since they may inform the court's determination of whether a defendant could reasonably expect to be sued in the forum. For example, where the contract indicates that it is to be substantially performed in the forum, that the law of the forum will control any disputes arising from the agreement, or that payment is directed to the forum, it is reasonable to assume that the buyer could anticipate being required to defend a suit in the forum. *See Rosen v. Solomon*, 374 F.Supp. 915, 919–20 (E.D.Pa. 1974) (contract negotiated in Pennsylvania and referred to Pennsylvania law), *aff'd*, 523 F.2d 1051 (3d Cir.); *Proctor & Schwartz Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974) (contract referred to Pennsylvania law).

Finally, the type of goods are relevant since there is less justification for asserting jurisdiction over a non-resident purchaser of mail-order consumer goods than over a non-resident commercial purchaser of sophisticated, high-priced industrial equipment. *See Empire Abrasive Equipment Corp. v. H. H. Watson, Inc., supra*, 567 F.2d at 558–59; *Sterling Industrial Corp., supra*, 484 F.Supp. at 1300.

■ While recognizing that this is a close question and that, indeed, some case authority would appear to call for a different result, I am satisfied, after weighing the factors discussed above, that *in personam* jurisdiction may be constitutionally asserted over A.J.F. First, and perhaps most importantly, it is plain that A.J.F. did more than act as a passive buyer of goods from a Pennsylvania corporation: A.J.F. initiated a

transaction to purchase a large number of relatively expensive and complex items—truck trailers—for which it specified certain features, and this purchase was acknowledged by letter from a Strick office in its Pennsylvania headquarters. Moreover, although the particular transaction was not discussed, nor were specific contract terms negotiated at the time, A.J.F.'s officers did visit one of plaintiff's plants in Pennsylvania to inspect the same type of trucks which A.J.F. later purchased. A.J.F., therefore, had fair notice that it was dealing with and had entered a binding obligation with a Pennsylvania-based company, even though the actual negotiations for this sale took place in St. Louis and Dallas. Further, A.J.F. could reasonably foresee that its breach of this contract would have an impact on Pennsylvania commerce and inflict some degree of economic harm in the state. Cf. Paolino v. Channel Home Centers, 668 F.2d 721, at 724 (3d Cir. 1981). Finally, the defendant has not shown any specific hardship or inconvenience which would result from its being required to appear in this forum.

■ Obviously, a number of facts in this case weigh in favor of dismissal, including the negotiations outside the forum, the invoice directing payment to Chicago, the absence of any direct calls or mail by A.J.F. to Strick in Pennsylvania, and the contract's silence on the controlling law and place of performance. Nevertheless, despite these indications that other forums have perhaps a closer connection to this transaction; it seems clear that A.J.F. is not unfairly burdened by this litigation. It is not necessary that a suit be brought where the defendant has the most contacts or even in the most logical forum; instead, it is enough that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe, supra, 326 U.S. at 316, 66 S.Ct. at 158. Nor are the concerns with defendant's passive role and plaintiff's freedom to act unilaterally which to some extent animated the court's opinion in Lakeside Bridge, supra, as pressing in

this case since A.J.F. did initiate the negotiations, did visit plaintiff's plant and did negotiate with Strick concerning the trade-in of used trucks and the specifications for the purchased trucks. Cf. Tamaqua Cable Prods. Corp. v. Dunlap Electronics, Inc., supra, at 391 (no jurisdiction where defendant was a "passive purchaser" required under a Government contract to purchase a relatively simple "stock item" from Government-approved subcontractors; defendant simply purchased from the lowest bidder [the plaintiff] without setting product specifications and without visiting, at any time, plaintiff's facilities).

With respect to the final federalism consideration outlined in World-Wide Volkswagen, supra, it is apparent that Pennsylvania has an interest in providing a forum for resolving disputes arising from contracts entered into by its residents and which have some impact on its commerce. See Paolino v. Channel Home Centers, supra; Else v. Inflight Cinema Intern., Inc., 465 F.Supp. 1239, 1242 (W.D.Pa.1979); Shen Manufacturing v. Gen-Tex Printing Co., 465 F.Supp. 829 (E.D.Pa.1978); Proctor & Schwartz, supra.

For the foregoing reasons, defendant's motion to dismiss will be denied.

II. *Venue*:

■ After determining that this court may properly exercise *in personam* jurisdiction, I turn, finally, to defendant's contention that venue is improper in this District. Section 1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

And Section 1391(c) provides:

> A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

It is undisputed that subject matter jurisdiction in this case is based solely on diversity of citizenship under 28 U.S.C. § 1332, and that plaintiff "resides" in Pennsylvania within the meaning of the venue statute by virtue of its incorporation in this state. *Cf. Suttle v. Reich Bros. Construction Co.,* 333 U.S. 163, 166, 68 S.Ct. 587, 589, 92 L.Ed. 614 (1948) ('residence' of a plaintiff corporation for venue purposes is established only in the state in which it has been incorporated). Accordingly, venue is properly laid in this district pursuant to 28 U.S.C. § 1391(a) since plaintiff resides here.

Contrary to defendant's contention, in cases based solely on diversity of citizenship, venue is available either in the district where "all plaintiffs [reside]" *or* where "all defendants reside" *or* where "the claim arose." 28 U.S.C. § 1391(a). In such cases, section 1391(c) does not impose venue requirements more restrictive than the alternative bases set forth in section 1391(a); instead, it simply provides an expanded definition of a corporate defendant's "residence" which may be relied upon when venue is sought to be established on the basis of the residence of all defendants under section 1391(a). *See American Cyanamid Co. v. Hammond Lead Products, Inc.,* 495 F.2d 1183, 1184 (3d Cir. 1974); *Galaxy Int'l, Inc. v. White Stores, Inc., supra,* 88 F.R.D. at 314; 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3811 at 57 and n.10 (1976).[1]

---

1. To the extent that my opinion in *North Eastern Timber (U.S.A.), Inc. v. Pines Trailer Corp.,* 501 F.Supp. 321, 322–23 (E.D.Pa.1980), is open to the reading that I was there proceeding on an understanding of the interrelationships of §§ 1391(a) and (c) contrary to that announced here, such a reading should be accorded swift burial and merciful obscurity; I suggest, however, that, narrowly read, the opinion in *North Eastern Timber v. Pines Trailer, supra,* is not inconsistent with today's holding, since it did not in terms address the question whether venue could be based on plaintiff's residence in a diversity action, and focused only on the interpretation of the "doing business" clause of section 1391(c). As stated in the opinion, "the parties agree that the issue before me is whether . . . [the defendant] is 'doing business' in this state." *Id.* at 322 (footnote omitted).