**BOEHRINGER, INC.**

v.

**MURAWSKI CORPORATION and Bruce G. Murawski.**

**Civ. A. No. 88–0304.**

United States District Court, E.D. Pennsylvania.

Aug. 18, 1988.

Carole D. Green, Norristown, Pa., for plaintiff.

Wilbur B. Ruthrauff, Philadelphia, Pa., for defendants.

MEMORANDUM OF DECISION

McGLYNN, District Judge.

Plaintiff brought this action to recover for the defendants' breach of contract. Presently before me is the defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case to the appropriate district court in Illinois. Based upon the following discussion, I will grant the defendants' motion

and transfer this case to the Northern District of Illinois.

*Facts*

Plaintiff, Boehringer, Inc., was incorporated in New York in July, 1985 and currently has its principal place of business in Exton, Pennsylvania. Plaintiff is engaged in the business of selling rock crushing equipment which is manufactured in West Germany by its parent corporation, Boehringer & Ratzinger GMBH. Defendant Murawski Corporation is an Illinois corporation with its principal place of business in Rockford, Illinois. Murawski Corporation is engaged in the business of selling and servicing rock crushing equipment. The defendant corporation is not authorized to do business in Pennsylvania, has no office or personnel in Pennsylvania, owns no real property in Pennsylvania and has no agent for service of process or for any other purpose in the Commonwealth of Pennsylvania. Defendant Bruce G. Murawski is the President and sole shareholder of the defendant corporation.

On August 29, 1984, the plaintiff and defendant corporation entered into a contract wherein the defendant agreed to act as a dealer for the plaintiff's products. It was stipulated that the defendant corporation's business would be wholly independent from that of the plaintiff. The contract was drafted on the letterhead of Boehringer and Ratzinger, the plaintiff's West German parent corporation. The contract required that "Boehringer" supply the defendant with technical and sales assistance through Thomas M. Hecker and that the prices for all purchased goods would be set by "Boehringer." "Boehringer" also agreed to supply certain identified equipment on a consignment basis against a conditional purchase order, security agreement and financing statement. Finally, it was agreed that the contract would last for one year from August 29, 1984 and that both parties would reserve the right to "review, modify and/or terminate the relationship at the end of the initial term."

Although it is unclear from the record exactly where the contract was executed, it is clear that it was executed outside the Commonwealth of Pennsylvania. At the time of execution, the plaintiff maintained its principal place of business in the state of New York. Subsequently, however, the plaintiff moved its principal place of business from New York to Merion, Pennsylvania, where the plaintiff operated its business out of an apartment in the garage of Melitta Heiland, Boehringer's Treasurer. Despite being present in Pennsylvania since 1984, the plaintiff admits that it did not register to do business until 1986. Presently, the plaintiff's office is located in Exton, Pennsylvania.

Since entering into the 1984 agreement, the defendant has purchased $1,254,676.52 worth of equipment and supplies through the plaintiff's Pennsylvania office. Plaintiff, however, has neglected to include any invoices or other documents relating to the defendant's purchases which would detail when and how the defendant's purchases were made. Plaintiff alleges that of the $1,254,676.52 worth of sales to the defendant, $191,593.47 remains outstanding and the plaintiff seeks to recover the outstanding balance through this litigation.

Although the defendant placed his orders through the plaintiff, all of the equipment was manufactured in West Germany and was shipped directly to the defendant in Illinois. On several occasions after signing the 1984 agreement, the defendant attempted to deal directly with the plaintiff's parent corporation in West Germany in order to bypass the plaintiff, but each attempt was "rebuffed" by the West German corporation. Affidavit of Thomas M. Hecker, Vice President of Boehringer, Inc. ¶ 11 (Hecker Affidavit). Defendant Murawski visited West Germany in 1985 and 1986 with several customers in order to develop sales, Affidavit of Bruce Murawski, President of Murawski Corporation ¶ 24, and engineers from the plaintiff's West German parent corporation visited the defendant's principal place of business during the same time period. *Id* ¶ 23. On one occasion, the defendant paid the expenses of Mr. Hecker and several officials from the plaintiff's West German parent corporation to visit the defendant's Illinois head-

quarters. Finally, defendant Murawski visited the plaintiff's place of business in Merion, Pennsylvania; however, the defendant alleges that no business was conducted on this visit and the plaintiff offers no evidence to suggest otherwise.

Plaintiff filed this suit to recover the funds allegedly owed by the defendant pursuant to the sales made to the defendant subsequent to the execution of the 1984 contract. After the defendant filed this motion, the plaintiff filed an amended complaint alleging additional tort theories of recovery.

*Discussion*

Once a jurisdictional defense is raised, the plaintiff bears the burden of proving that the defendant's contacts with the forum state are sufficient to give the court *in personam* jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984). The plaintiff must come forward with jurisdictional facts either through affidavits, answers to interrogatories, depositions or other competent evidence to establish a *prima facie* case of jurisdiction. *Id.* at 66–67 n. 9; *Kyle v. Continental Capital Corp.,* 575 F.Supp. 616, 620 (E.D.Pa.1983).

A. General Jurisdiction

■ At the outset it is important to note that the plaintiff has not established that the defendants maintained "continuous and systematic contacts" with this forum which are necessary for this court to exercise general jurisdiction over the defendant corporation or Mr. Murawski. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Plaintiff has not produced any evidence that the defendants maintained an office in Pennsylvania, conducted any business in Pennsylvania aside from the business with the plaintiff, maintained any property in Pennsylvania, or manufactured or sold any of its products in Pennsylvania. Further, the plaintiff can only show that the defendants visited the state of Pennsylvania once during the past four years. Clearly, the mere fact that the defendants placed orders for the purchase of goods, especially under the facts of this case, does not create a basis for this court to exercise general jurisdiction. *See id.* at 417, 104 S.Ct. at 1874. Accordingly, I find that this court cannot assert personal jurisdiction over either defendant based on a theory of general jurisdiction.

B. Specific Jurisdiction
   1. *Jurisdiction of the Corporate Defendant*

■ Plaintiff also maintains that jurisdiction may be based upon a theory of specific jurisdiction—that is, that the transaction giving rise to the controversy arose out of the defendant's forum-related activity. Under such a theory, I must determine whether "there are enough contacts with the forum arising out of *that* transaction in order to justify the assertion of jurisdiction over the out-of-state defendant." *Reliance Steel Products Company v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982) (emphasis added). In each case, it is essential that the defendant perform some act by which it purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The resolution of the defendants' motion here depends on a determination of this issue.

In *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.,* 532 F.Supp. 951, 958 (E.D.Pa.1982), Judge Pollak identified four factors which must be considered in "gauging both the weight that should attach to a defendant's 'act' of entering a contract with a resident plaintiff" and the extent to which the defendant may have been able to reasonably foresee that a breach of the contract would subject him to suit in the forum. The factors include: (1) the character of the precontract negotiations; (2) the location of those negotiations; (3) the terms of the sales agreement; and (4) the type of goods sold. *Id.*

In *Strick,* the defendant purchased a large number of trailer trucks from the plaintiff between 1973 and 1980. Officials from the defendant company visited the

plaintiff's Pennsylvania facility on an information gathering tour relating to the purchases. The parties communicated by telephone and mail. After applying the four factors, Judge Pollak held that the court had jurisdiction. The court emphasized that the *Strick* defendant was more than a mere passive buyer. The defendant initiated the negotiations to purchase a large number of expensive and complex industrial trailers from a facility in Pennsylvania. In furtherance of the transaction, the defendant visited the plaintiff's Pennsylvania facility and had fair notice that it was dealing with a Pennsylvania-based company and that a breach would have an economic impact in the Commonwealth. *Id.* at 960.

In this case, as in *Strick,* the goods purchased by the defendant corporation can be assumed to be expensive and complex industrial items. Nevertheless, while this finding satisfies the fourth factor of *Strick,* it does not automatically justify a finding of jurisdiction. By its nature, resolution of a jurisdictional question requires a fact specific inquiry. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The character of the precontract negotiations are, at best, ambiguous and it is doubtful as to whether they support jurisdiction over the defendant corporation. If I resolve all inferences in the plaintiff's favor, I conclude that the defendant initiated the negotiations. The extent of the give-and-take or dickering involved in the negotiations, however, is unknown. There is no evidence concerning whether the defendant actively sought to have specific terms incorporated into the contract or whether the defendant corporation passively accepted the plaintiff's terms.

There is no evidence relating to the location of the contract negotiations. It is clear, however, that none of the negotiations took place in the Commonwealth of Pennsylvania. As such, the location of the negotiations do not support an assertion of jurisdiction.

Moreover, the terms of the 1984 contract do not support a finding of jurisdiction. The 1984 agreement does not mention Pennsylvania. There is no choice of law provision and the only address in the contract is that of the plaintiff's West German parent corporation. Although the contract does refer to "Boehringer" and Mr. Hecker, the plaintiff submits no evidence to suggest that either Boehringer or Mr. Hecker had any connection to Pennsylvania at that time or that the defendant knew of any such contacts. The affidavits submitted by the plaintiff to prove that the defendant had such knowledge are flawed because they contain no affirmative, nonconclusory showing that the affiants' statements are based on their personal knowledge and upon admissible evidence. *See Monroe v. Board of Education of Town of Wolcott,* 65 F.R.D. 641 (D.Conn.1975) (discussing requirements of Rule 56(e)).

It is true, of course, that after the plaintiff moved to Pennsylvania in October, 1984, the defendant corporation continued to deal with the plaintiff by submitting eight to twelve orders for equipment totaling slightly more than $1.2 million between 1984 and 1987. For the first year of this time period, however, the plaintiff was bound by the contract signed in August, 1984. Under such circumstances the defendant corporation was akin to a passive buyer which was bound to deal with the plaintiff who had unilaterally decided to move to Pennsylvania. *See, e.g., Tamaqua Cable Products Corp. v. Dunlap Electronics,* 531 F.Supp. 388, 391 (E.D.Pa.1982) (stating that since defendant purchaser was "required" to subcontract with the plaintiff, defendant was a passive purchaser and did not dictate terms to plaintiff). The plaintiff's decision to move to Pennsylvania was clearly not within the control of the defendant. Therefore, at least for the first year of the contract the defendant corporation was analogous to a passive buyer which was required to deal with the plaintiff in Pennsylvania due to the plaintiff's unilateral decision to relocate in that state.

After the first year of the contract, however, the defendant corporation had the

opportunity to modify or even terminate the contract. Since the defendant continued to deal with the plaintiff in Pennsylvania, the defendant took on features of a more active purchaser. Between 1985 and 1987, the defendant corporation sent payments into Pennsylvania and placed orders with the plaintiff by mail and phone. These contacts alone, however, are not enough to find that the defendant purposefully availed itself of the privilege of doing business in this forum. *See, Freedom Forge Corp. v. Jersey Forging Works, Inc.,* 549 F.Supp. 99, 101 (M.D.Pa.1982) (discussing orders generally); *Baron & Co. v. Bank of New Jersey,* 497 F.Supp. 534, 538 (E.D.Pa.1980) (discussing mailing checks); *See also, Dee Paper Co. v. Springfield Electrical Specialties, Inc.,* No. 86–5606, slip op. at 3 (E.D.Pa. March 31, 1987) [available on WESTLAW, 1987 WL 8838] (discussing phone calls and mailings); *Stop–A–Flat Corporation v. Electra Start of Michigan, Inc.,* 507 F.Supp. 647, 650–651 (E.D.Pa.1981) (stressing need for defendant's visit to forum for purposes of negotiation); *The Western Union Telegraph Co. v. T.S.I., Ltd.,* 545 F.Supp. 329, 335 (D.N.J.1982) (stressing need for defendant's visit to forum for purposes of negotiation). Moreover, even if these contacts were sufficient, the plaintiff has produced no evidence to show how extensive the defendant's contacts were between 1985 and 1987. Without such evidence, I cannot determine whether the defendant purposefully availed himself of the privilege of doing business in Pennsylvania. *See, e.g., Societe Nouvelle Generale v. Kool Stop Int'l.,* 633 F.Supp. 153, 155 (E.D.Pa.1985) (emphasizing need for plaintiff to produce evidence to establish jurisdiction).

The plaintiff does make reference to a contract which was incorporated into the parties' relationship in 1987 and allegedly applied retroactively. The defendants vigorously dispute this assertion, however, contending that they never agreed to the terms of the alleged 1987 contract. Other than making conclusory allegations, the plaintiff has failed to produce any facts or a legal theory upon which I could find that the alleged contract governed the relationship between the parties. Moreover, even if I could make such a finding, it is doubtful whether it would change my decision due to the plaintiff's failure to produce evidence to support a prima facie case of jurisdiction.

Accordingly, I find that this court lacks personal jurisdiction over the defendant corporation.

2. *Jurisdiction over Bruce Murawski*

Plaintiff also seeks to assert jurisdiction over Bruce Murawski in his individual capacity based upon his actions taken as an official of Murawski Corporation. Generally, the resolution of this issue would require a separate analysis. *See Minigraph, Inc. v. Qualitech Computer Centers, Inc.,* No. 86–5869, slip op. 11–17 (E.D.Pa. June 30, 1987) [available on WESTLAW, 1987 WL 13345]. In this case, however, I need not engage in this separate analysis. Since I found that this court lacks personal jurisdiction over the defendant corporation based on the corporation's contacts with this forum, I find that the Court also lacks jurisdiction over defendant Murawski based on those same contacts.

Accordingly, I find that this court lacks personal jurisdiction over defendant Bruce Murawski.

C. Transfer Under § 1404(a)

Since I have found an absence of facts of record which establish this court's jurisdiction over the defendants with respect to the plaintiff's claims for breach of contract, this case must either be dismissed or transferred to the Northern District of Illinois, where it could have been originally brought. *Societe Nouvelle Generale,* 633 F.Supp. at 155.

In this case, the plaintiff has filed an amended complaint alleging several tort claims and unfair trade practice claims. In addition, the plaintiff seeks to pierce the corporate veil in order to hold Bruce Murawski personally liable. In light of the fact that the contract claim will have to be brought in the Northern District of Illinois and the fact that most of the evidence relating to the plaintiff's additional claims

are situated in Illinois and outside the Eastern District of Pennsylvania, I find that it would promote the interests of justice and the convenience of the parties and witnesses if this case was transferred to the Northern District of Illinois.