**LESSER & KAPLIN, P.C.**

v.

**The AMERICAN INSURANCE COMPANY and Richmond Redevelopment and Housing Authority.**

**Civ. A. No. 88–7105.**

United States District Court, E.D. Pennsylvania.

Oct. 12, 1989.

Louis J. Sinatra, Lesser & Kaplin, P.C., Blue Bell, Pa., for plaintiff.

Jeffrey A. Less, Bazelon, Less & Price, Philadelphia, Pa., for defendant.

## MEMORANDUM

WALDMAN, District Judge.

### I.

Plaintiff Lesser & Kaplin, P.C. ("Lesser & Kaplin") initiated this action against defendants The American Insurance Company ("American") and The Richmond Redevelopment and Housing Authority ("the Authority") for payment of legal services. Presently before the court is defendants' motion to dismiss Count I of the three-count Complaint or, alternatively, to change venue pursuant to 28 U.S.C. § 1404. For the reasons set forth below, this case will be transferred to the United States District Court for the Eastern District of Virginia.

### II.

Plaintiff, the law firm of Lesser & Kaplin, is a Pennsylvania professional corporation with its principal place of business in Blue Bell, Pennsylvania. Defendant American is a New Jersey corporation. Defendant Authority is a political subdivision of the Commonwealth of Virginia created pursuant to 6 Va.Code Ann. § 36–4 (Michie 1984) and operating within the City of Richmond, Virginia.

In April 1985, American issued payment and performance bonds on behalf of Fletcher & Sons, Inc. ("Fletcher"), a Pennsylvania corporation, for the Richmond Exhibition Center Construction Project ("the Project"). Fletcher was the general contractor on the Project. The Authority was the owner.

In the fall of 1986, two of the Project's subcontractors filed separate actions against Fletcher, as general contractor, and against American, as Fletcher's surety, in the United States District Court for the Eastern District of Virginia. In addition to asserting counterclaims, Fletcher and American filed a third-party complaint against the Authority in both lawsuits. Pursuant to certain agreements, Fletcher retained Lesser & Kaplin to represent both Fletcher and American in these lawsuits. This representation ended during the summer of 1987.

In 1988, both of the Virginia lawsuits were settled, including an agreement that the Authority would pay substantial funds directly to American, as a creditor of Fletcher. The Authority subsequently paid the settlement proceeds to American.

### III.

In its three-count Complaint, Lesser & Kaplin seeks to collect legal fees in the amount of $101,728.30 from American and the Authority. In Count I, Lesser & Kaplin alleges that the Authority and American are statutorily liable to pay them attorney's fees out of the settlement proceeds under Section 54–70 of the Virginia Code, which provides in relevant part:

> Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract, may contract with any attorney-at-law to prosecute the same, and such attorney shall have a lien upon such cause of action as security for his fees for any services rendered in relation to the cause of action or claim. And ... any settlement or adjustment of such cause of action shall be void against the lien so created, except as proof of liability on such cause of action.

Counts II and III of the Complaint are alternative counts based on contract and quasi-contract theories, respectively, against American only.

Defendants claim that this court cannot exercise personal jurisdiction over the defendant Authority. Defendants further argue that, because the Authority is an indispensable party to this litigation, the court should dismiss Count I of the Complaint or, in the alternative, transfer the case to the Eastern District of Virginia where all indispensable parties, including the Authority, may properly be joined.

### IV.

Service of process on defendants was made pursuant to Federal Rule of Civil Procedure 4(e) which provides that a party may be served in the manner prescribed by the state in which the district court sits.

Thus, the motion to dismiss for lack of personal jurisdiction must be tested against Pennsylvania's long-arm statute, 42 Pa. Cons.Stat.Ann. § 5301 *et seq. See Strick Corp. v. A.J.F. Warehouse Distrib., Inc.,* 532 F.Supp. 951, 953 (E.D.Pa.1982); *Spelling–Goldberg Prods. v. Bodek & Rhodes,* 452 F.Supp. 452, 453 (E.D.Pa.1978). This statute, in turn, permits a court to assert personal jurisdiction over a defendant "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons.Stat.Ann. § 5322. The parameters of jurisdiction set by Pennsylvania's long-arm statute are therefore co-extensive with those of the due process clause of the Fourteenth Amendment to the United States Constitution.

■ To establish personal jurisdiction over a defendant who is not present in the forum state, plaintiff bears the burden of proving that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see also Strick Corp.,* 532 F.Supp. at 953. However, minimum contact analysis is inappropriate where defendant's forum activities do not give rise to the claim. Instead, where defendant's activity is not forum-related, plaintiff must demonstrate that the defendant maintained "continuous and substantial" forum affiliation. *Schwilm v. Holbrook,* 661 F.2d 12, 14 (3d Cir.1981); *Compagnie des Bauxites de Guinea v. Insurance Co. of North America,* 651 F.2d 877, 889–91 (3d Cir.1981) (Gibbons, J., dissenting); *Strick Corp.,* 532 F.Supp. at 956.

The court's first inquiry, then, concerns whether the Authority's activity was "forum-related." To qualify, the Authority must have committed some act by which it purposefully availed itself of the privilege of conducting activities in Pennsylvania, thus invoking the benefit and protection of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The focus must be on the relationship between the transaction giving rise to the lawsuit and the forum where the plaintiff seeks to litigate it. *Reliance Steel Products v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982).

Plaintiff contends that the "transaction" giving rise to the present lawsuit includes not only the prosecution, defense and settlement of the previous litigation, but also the negotiation, execution and performance of the general construction contract between Fletcher and the Authority. The court finds this characterization unpersuasive. Plaintiff arbitrarily combines two separate and distinct transactions—one for construction services, and one for legal representation. The latter of these transactions is the only one at issue here.

Having concluded that the transaction giving rise to the present action consists of the prosecution, defense and settlement of the previous two Virginia lawsuits, the court finds that the Authority's activities in regard to that transaction are clearly not forum-related. Far from purposefully availing itself of the benefit and protection of Pennsylvania law, the Authority was compelled to enter litigation by virtue of third-party complaints filed against it by Fletcher and American. In addition, virtually all of the operative events underlying the claim against the Authority occurred in Virginia, including the settlement talks and the agreement itself.

Even if one characterized the pertinent transaction as including the general construction contract between Fletcher and the Authority, there would still be insufficient minimal contacts to satisfy specific jurisdictional requirements. The negotiation and execution of the construction contract clearly contemplated performance in Virginia. The Authority solicited bids from contractors through trade journals of general circulation, and all bids were sent to the Authority in Virginia. To the extent that negotiations can be said to have occurred anywhere, they occurred in Virgi-

nia. *See Gagner v. Parsons & Whitte-more, Inc.,* 450 F.Supp. 1093 (E.D.Pa.1978) (no Pennsylvania jurisdiction where, despite phone conversations and mail correspondence in Pennsylvania, contract execution and performance occurred in New York). Finally, construction of the building itself took place in Virginia, the locus of all other aspects of the general construction contract. *See Blue Ball Properties v. McClain,* 658 F.Supp. 1310 (D.Del.1987) (no Delaware jurisdiction where execution and performance took place in Maryland).

■ While plaintiff's claim against the Authority is based on non-forum-related activities, this court can nevertheless assert personal jurisdiction over the Authority if plaintiff can demonstrate that the Authority has maintained continuous and substantial affiliation with Pennsylvania. The Third Circuit has held that this entails a very high threshold of proof since the facts required to assert this "general" jurisdiction must be "extensive and persuasive." *Reliance Steel,* 675 F.2d at 589.

The evidence that plaintiff offers on this point is neither extensive nor persuasive. Plaintiff alleges only that defendant Authority may have occasionally solicited bids from Pennsylvania contractors, may have entered into contracts with a few of these firms, may have sold bonds indirectly to Pennsylvania residents, and may have advertised in publications of general circulation which find their way into Pennsylvania. There is no evidence that the Authority maintains an office in Pennsylvania, or for that matter regularly sends agents or salespeople into Pennsylvania.[1] The negligible contacts cited by plaintiff are simply insufficient to give this court jurisdiction over the Authority. *See Reliance Steel,* 675 F.2d at 589 (advertisement seeking business in exclusively Pennsylvania directory would not constitute "continuous and substantial" business activity); *Cloverbrook C & D, Inc. v. William Graulich & Associates,* 664 F.Supp. 960 at 961 (E.D.Pa. 1987) (phone conversations concerning con-struction contract insufficient to confer jurisdiction on Pennsylvania courts).

## V.

■ Having concluded that this court cannot exercise personal jurisdiction over the defendant Authority, the court must next determine whether the Authority is an indispensable party to this action.

Federal Rule of Civil Procedure 19(a)(2)(i) requires that a party be joined if nonjoinder would "as a practical matter impair or impede the person's ability to protect [a legally cognizable] interest." *See 3A Moore's Federal Practice* ¶ 19.07[2.0] at 19–99 (2d ed.). In this case, the Authority clearly has a legally cognizable interest in seeing that its settlement of the Virginia lawsuits is not held to be void by operation of the Virginia attorney's lien statute. The fact that the Authority has already forwarded the settlement proceeds to American does not eliminate that interest. *See Katopodis v. Liberian S/T Olympic Sun,* 282 F.Supp. 369 (E.D.Va.1968) (defendant liable for attorney's fees when, with notice of the attorney's lien, it paid settlement directly to plaintiff).

In addition, a determination that a party is "indispensable" is especially appropriate where "the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b). Here, the plaintiff will still have an adequate remedy since Lesser & Kaplin could bring the action in the United States District Court for the Eastern District of Virginia, a court to whose jurisdiction both the Authority and American are subject.

Plaintiff contends that, because American has agreed to indemnify the Authority with respect to these proceedings, the Authority has no real economic stake here. However, a right to indemnification does not arise until, at the very earliest, a legal liability and the obligation to make payment on account of that liability exists. Williston, *Contracts* (3d ed. 1979), § 1409. Thus, the terms of the indemnity agreement, from a legally cognizable standpoint,

---

1. Indeed, the Authority is forbidden by statute from constructing and maintaining buildings anywhere but within the City of Richmond, Virginia. Va.Code Ann. § 36–19(2).

would only take effect following a judgment of liability against the Authority. Plaintiffs fail to distinguish between an immediate legal interest and a speculative economic one.

## VI.

■ Finally, defendants argue that, because the Authority is an indispensable party, this court should either dismiss Count I of the Complaint, or transfer the entire case to the United States District Court for the Eastern District of Virginia. Because of the available alternative forum, the court will grant defendant's request for a change in venue, rather than dismiss Count I of the Complaint.

28 U.S.C. § 1404 permits a transfer in the "interests of justice." Relevant factors in deciding a motion to transfer include: (1) the plaintiff's choice of forum; (2) ease of access to sources of proof; (3) the cost and ability of obtaining attendance of witnesses; (4) factors that make the trial of a case easier, more expeditious and inexpensive; and, (5) factors affecting the public interest. *Cain v. Dedonatis,* 683 F.Supp. 510, 512 (E.D.Pa.1988); *Gulf Oil v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In weighing these factors, a court should not grant a motion to transfer unless defendant can demonstrate that the balance of interests strongly favor a change in venue. *B.J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091, 1103 (E.D.Pa. 1977).

In this case, the relevant factors, when considered as a whole, indicate that defendant has carried its burden even when substantial weight is given to plaintiff's choice of forum. Plaintiff's choice of forum is usually entitled to paramount consideration, *Shutte v. Armco Steel Corporation,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). An exception to this general rule occurs when the operative facts underlying the alleged cause of action have no material connection with the forum chosen. *Luca Oil Drilling Co. v. Gulf Oil Corp.,* 593 F.Supp. 1198, 1200 (W.D.Pa.1984); *Kreisner v. Hilton Hotel Corp.,* 468 F.Supp. 176,

177 (E.D.N.Y.1979). Here, the litigation giving rise to plaintiff's claim was in Virginia, as was the negotiation and execution of the settlement agreement in question.

Factors that would make the resolution of this dispute easier, more expeditious and inexpensive strongly militate in favor of holding these proceedings in the Eastern District of Virginia. Absent a transfer, this court would have to dismiss Count I of the Complaint, thereby forcing plaintiff to refile his claim in another jurisdiction, most likely the Eastern District of Virginia or a Virginia state court. Because Lesser & Kaplin's claim against the Authority arises from the same operative facts as those underlying its claim against American, relitigation against the Authority in a separate action would duplicate the cost to the parties and the burden on judicial resources, subject at least some witnesses to additional inconvenience and risk inconsistent results.

The court recognizes that plaintiff is a Philadelphia law firm, some of whose members will likely be witnesses in this action. Because of the relative proximity of Virginia to Pennsylvania, however, transfer of this case to that forum will not significantly impact upon plaintiff's ability to present its case, and will on balance serve the interests of economy and convenience. *See generally Kreisner,* 468 F.Supp. 176 (plaintiffs' litigation strategy must yield where considerations of unnecessary expense and judicial economy are implicated). It is not unreasonable to require attorneys who were prepared to spend substantial time litigating in Virginia to spend one day there to testify in support of their claim for fees. This is particularly so when they would have to do so in any event to pursue their first claim against the Authority.

Finally, a number of factors indicate that transfer in this case will serve the public interest. First, the capability of joining the Authority and all other interested parties in Virginia, which is impossible in this forum, is an important consideration that weighs heavily in favor of changing venue. *See Vassallo v. Niedermeyer,* 495 F.Supp. 757, 59 (S.D.N.Y.1980).

Second, this case will turn on questions of Virginia law, and "construction of State law is best left to courts most familiar with it." *Kreisner*, 468 F.Supp. at 179. Among other questions, a court will necessarily have to decide (1) whether "attorneys-at-law" in the attorney's lien statute includes persons not admitted to the Virginia bar, which, in turn, may require an interpretation of the local rules of the Eastern District of Virginia; (2) how various rules regarding the priority of competing security interests in Article 9 of the Virginia Uniform Commercial Code interact with the Virginia attorney's lien statute; (3) when and how a lien is perfected under the Virginia statute; and, (4) whether a lien is effective against persons who were not adverse to the lienor's client in the original suit. Resolution of these and other related questions is best left to the district court which has the greatest familiarity with Virginia law and its own local rules.

Third, if the defendants are found liable for attorney's fees under Count II or Count III of the Complaint, a court will have to determine the reasonable value of Lesser & Kaplin's services with reference to prevailing standards in the place where the services were performed, the Eastern District of Virginia. This is a determination more easily and reliably made by the court in Virginia.

### VII.

For the reasons stated above, defendants' motion for change of venue will be granted, and this case will be transferred to the United States District Court for the Eastern District of Virginia.

An appropriate order follows.