**TJS BROKERAGE & CO., INC., Plaintiff,**

v.

**Thomas P. MAHONEY, et al., Defendants.**

**No. 96–CV–3003.**

United States District Court, E.D. Pennsylvania.

Sept. 18, 1996.

Paul D. Keenan, Marguerite S. Walsh, Paul B. Halligan, Buchanan Ingersoll P.C., Philadelphia, PA, for Plaintiff.

Thomas P. Mahoney, North Merrick, NY, pro se.

Cost Control Consultants Corp., North Merrick, NY, for Cost Control.

Andrew L. Miller, Paul & Miller, Bala Cynwyd, PA, John J. Petriello, Levy, Ehrlich & Kronenberg, Newark, NJ, for Garden State and Hanover.

### *MEMORANDUM AND ORDER*

JOYNER, Judge.

Plaintiff TJS Brokerage & Co., Inc. ("TJS") has brought this diversity action against Defendants Thomas P. Mahoney ("Mahoney"), Cost Control Consultants Corporation ("Cost Control"), Garden State Consolidating, Inc. ("Garden State"), and Hanover Warehouse, Inc. ("Hanover") pursuant to 28 U.S.C. § 1332. Defendant Mahoney has filed a *pro se* motion to dismiss TJS's complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) or, alternatively, to transfer the action to the Southern District of New York. Defendants Garden State and Hanover have jointly moved to dismiss TJS's complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) or, in

the alternative, to transfer the action to the District of New Jersey, Newark Division. Plaintiff TJS has opposed the defendants' motions and asked the Court in the alternative, to grant it an opportunity to conduct discovery in order to ascertain whether a sufficient basis for personal jurisdiction over the defendants exists. Defendant Cost Control has not appeared in this action.

## BACKGROUND

TJS is a motor carrier freight broker located in Philadelphia and licensed to transport commodities on behalf of various shippers. In its complaint, TJS alleges that on January 20, 1993, TJS entered into an exclusive agency agreement with Cost Control, a New York corporation whose sole shareholder and president is Defendant Mahoney. The agreement called for Cost Control to broker freight shipments and procure carriers for transportation on behalf of TJS. Pursuant to the agency agreement, Mr. Mahoney agreed to personally guarantee any and all obligations owed by Cost Control to TJS. The agreement also contained non-compete and non-disclosure covenants to protect proprietary information and documents that TJS had accumulated and to which Mahoney and Cost Control would have access. These covenants were to be effective for two years after the termination of the agency relationship.

TJS alleges that in the fall of 1994, Cost Control, through Mr. Mahoney, notified TJS that it was terminating the agreement because Cost Control had decided to handle only air freight. TJS also asserts that Cost Control violated the non-compete clause by directing business previously given to TJS to other freight brokers and shipper's agents, including Hanover, a New Jersey company that operates a public warehouse, and Garden State, a New Jersey-based freight forwarder.

The complaint contains four counts. In Count I, TJS asserts a breach of contract claim against Defendants Cost Control and Mahoney. TJS alleges that Cost Control breached the agency agreement by competing with TJS within two years of the termination of the agency agreement, soliciting business from and doing business with carriers and customers of TJS, and directing TJS' business to Hanover and Garden State.

TJS asserts in Count II that Garden State and Hanover, which are allegedly related entities, tortiously interfered with the contractual relationship between TJS and Cost Control.

In Count III, TJS alleges that all of the defendants tortiously interfered with TJS's contractual relations with its customers and clients by improperly using proprietary information and documents developed by TJS.

Finally, in Count IV, TJS alleges that all of the defendants conspired to misappropriate TJS's customers, trade secrets and proprietary information and to interfere with TJS' contractual and business relations in order to unfairly compete with TJS.

## DISCUSSION

### I. MOTION TO DISMISS

#### STANDARD OF REVIEW

Once a defendant raises a personal jurisdiction defense, the plaintiff bears the burden of coming forward with a set of facts sufficient to create a prima facie case of jurisdiction. *Mellon Bank PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). Plaintiff's jurisdictional allegations must be supported with appropriate affidavits or documents, because a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd*, 735 F.2d 61, 67 n. 9 (3d Cir.1984); *Strick Corp. v. A.J.F. Warehouse Distrib., Inc.*, 532 F.Supp. 951, 953 (E.D.Pa. 1982). Any conflict in affidavits submitted by plaintiff and defendant is resolved in favor of the plaintiff. *DiMark Marketing v. Louisiana Health Serv.*, 913 F.Supp. 402, 404 (E.D.Pa.1996).

A federal district court is permitted to exercise "personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident*, 819 F.2d at 436 (citing Fed.R.Civ.P. 4(e)).

Pennsylvania's long-arm statute provides for both general and specific personal jurisdiction. General jurisdiction exists when the non-resident defendant is deemed "present" in the state by virtue of its voluntary actions, such as maintaining continuous and substantial forum contacts, consenting to jurisdiction, or being domiciled in the state. 42 Pa.Cons.Stat.Ann. § 5301. Specific personal jurisdiction is found if the cause of action arises through any one of the following contacts with the state: (1) transacting business in Pennsylvania (2) contracting to supply services or things in the Commonwealth (3) causing harm or tortious injury by an act or omission in Pennsylvania (4) causing harm or tortious injury in Pennsylvania by an act or omission outside the state (5) having an interest in or using or possessing real property in the state (6) engaging in the insurance business in the state (7) accepting an election or appointment in the state (8) executing a bond (9) making an application to a governmental unit for any certification, license or similar instrument or (10) committing a violation within the state of any law or court order. 42 Pa.Cons.Stat.Ann. § 5322(a)(1)–(10).

▌ Pennsylvania's jurisdiction extends to the "fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." § 5322(b). The due process limit of long-arm jurisdiction is defined in a series of Supreme Court decisions including *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Supreme Court has held that jurisdiction is proper when a defendant purposefully establishes "minimum contacts" in the forum state, by deliberately engaging in significant activities or by creating continuing obligations such that he has "availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184; *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. These acts must be "such that [a defendant] should rea-sonably anticipate being haled into court [in the forum State]." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. Further, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Thus, when determining whether personal jurisdiction exists, courts must resolve the question based on the circumstances that the particular case presents. *Burger King*, 471 U.S. at 485, 105 S.Ct. at 2189.

### A. Jurisdiction Over Mr. Mahoney

Defendant Mahoney was the sole shareholder and president of Cost Control, which eventually went out of business in March 1995. Since February 1995, Mahoney has conducted business in his own name or that of Cost Control. TJS asserts that it has jurisdiction over Defendant Mahoney because he visited TJS' office in Pennsylvania to inspect TJS' facilities and meet TJS personnel. Furthermore, the agency agreement at issue was executed in Pennsylvania and Mahoney was paid from TJS' Pennsylvania office. Lastly, Mahoney had training and support from the TJS home office in Pennsylvania.

Defendant Mahoney claims that the only time he visited the plaintiff's office was in September 1992 as an agent for the North East Air Transport. He further claims that all billing was handled from his office in New York, that any training he received was received in his New York office, that there was no home office support from TJS, that he was solicited in New York by the plaintiff, and that the agreement was signed in his office in New York. Finally, Mahoney makes the point that any business he conducted was not only exclusively done in New York, but it was in furtherance of plaintiff's business, not his or Cost Control. Nevertheless, Mahoney does admit that he made phone calls to Pennsylvania in furtherance of his business with TJS.

▌ Plaintiff has not alleged that Defendant Mahoney had any of the above mentioned contacts with Pennsylvania other than

in his capacity as agent for Cost Control, and generally a defendant is not individually subject to personal jurisdiction merely based on his actions in a corporate capacity. *Moran v. Metropolitan District Council,* 640 F.Supp. 430, 433 (E.D.Pa.1986). Courts have held that in order to hold such a defendant subject to personal jurisdiction, it must be shown that the defendant had a major role in the corporate structure, the quality of his contacts with the state were significant, and his participation in the tortious conduct alleged was extensive. *Id.* at 434. If those factors are present, the defendant's contacts with the forum in his corporate capacity may be considered in deciding if he should be subject to jurisdiction in an individual capacity. *Id;* (case by case approach favored when considering whether all defendant's contacts with forum should be taken into account) cf. *Simkins v. Gourmet Resources Int'l,* 601 F.Supp. 1336, 1345 (E.D.Pa.1985) (defendant's contacts with forum in corporate capacity not relevant in deciding whether defendant is subject to jurisdiction in individual capacity).

Furthermore, at least one court has held that there is specific personal jurisdiction over nonresident guarantors individually even though they had no physical contact with the forum, since they "knowingly created continuing obligations with a citizen of Pennsylvania." *Mellon,* 960 F.2d at 1223.

■ We therefore find that defendant Mahoney has enough contact with Pennsylvania to be held subject to the court's jurisdiction. Following the case by case approach set forth in *Moran,* we find that Mahoney, as sole shareholder and president of Cost Control, had a significant role in Cost Control's corporate structure, and that he had, according to plaintiff's allegations, a significant role in the tortious conduct charged. Therefore, Mahoney's contacts with Pennsylvania in his corporate capacity may be considered when evaluating whether Mahoney is subject to personal jurisdiction in this state.

■ Mahoney had extensive contact with Pennsylvania since he visited the TJS' facilities, received training here, executed the agency agreement here, received his payments from TJS' Pennsylvania office, and made continuous phone calls to Pennsylvania.

The agency agreement caused Mahoney to have an ongoing relationship with TJS for over a year and thus his contacts with Pennsylvania can be said to meet the minimum contacts required for specific jurisdiction under 42 Pa. Const. § 5322(4). *See Strick,* 532 F.Supp. at 959.

Furthermore, Mahoney personally guaranteed Cost Control's obligations under the agreement with TJS, thereby fostering a significant relationship with the resident plaintiff in accordance with *Mellon.* We therefore hold that Defendant Mahoney is subject to this Court's jurisdiction.

### B. *Jurisdiction over Garden State*

■ Garden State concedes that it transacts business within Pennsylvania but maintains that this contact is minimal and constitutes only a minor portion of its business. Further, it points out that because it is located in New Jersey, all of its business flows from New Jersey, not Pennsylvania. Finally, it concedes that it retains three salesmen based in Pennsylvania, but declares that they are independent contractors who direct business to Garden State from all over the United States, not just Pennsylvania. As such, Garden State contends that these salesmen are not its agents. Moreover, to the extent that these salesmen do business in Pennsylvania, Garden State asserts that this business is a small portion of its general trucking business. These contacts allegedly comprise all of its connection with Pennsylvania. Garden State has filed a series of affidavits to support its assertions.

TJS insists that Garden State is sufficiently connected with Pennsylvania so that general personal jurisdiction exists. It points out that the nature of Garden State's business is to arrange for the transportation of goods throughout the nation, including Pennsylvania. To do this, Garden State uses Pennsylvania-based shipping companies to service its Pennsylvania-based customers. TJS also asserts that Garden State advertises in truck stops in Pennsylvania, although Garden State asserts that these advertisements are part of a national advertising campaign and are not directed specifically at

Pennsylvania. TJS places more importance on Garden State's Pennsylvania sales force than Garden State does because these salesmen allegedly solicit Pennsylvania customers on Garden State's behalf. Finally, Garden State frequently contacts its sales force and customers by telephone in Pennsylvania. TJS has proffered affidavits supporting each of these allegations.

We conclude that TJS has presented a prima facie case of general personal jurisdiction over Garden State in Pennsylvania. In so ruling, we are not persuaded solely by the fact that Garden State has advertised in Pennsylvania truck stops, as these advertisements are not specifically directed to Pennsylvania. *Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F.Supp. 1048, 1054 (E.D.Pa.1994). We are persuaded by the fact that Garden State apparently has a sales force in Pennsylvania to solicit Pennsylvania business and that Garden State uses Pennsylvania-based trucking companies to transport goods through Pennsylvania. *Strick*, 532 F.Supp. at 955. Garden State can be said to have maintained a "continuous and systematic part of its general business in Pennsylvania" since it solicits business regularly from Pennsylvania and advertises in a way that is at least partially targeted to the forum market. *Id.* at 955–56. As long as Garden State maintains regular contact with Pennsylvania, the amount of business that it does in this state is irrelevant. *Provident*, 819 F.2d at 437–38 (amount of defendant's total business conducted in forum immaterial when defendant had daily transactions with forum).

Since we have ruled that this Court has general personal jurisdiction over Garden State, we need not address whether specific personal jurisdiction is present.

### C. *Jurisdiction Over Hanover*

Hanover contends that it has no contacts with Pennsylvania at all and so there is no general personal jurisdiction over it. TJS disagrees. TJS alleges that Hanover stores goods from Pennsylvania locations, does business with Pennsylvania customers, shippers and agents, and transports goods to Pennsylvania locations. TJS also claims that Hanover also maintains the same Pennsylvania-based salesmen that Garden State does and that these salesmen solicit Pennsylvania business on behalf of Hanover. In addition, TJS alleges that Hanover and Garden State are a "single entity" because of an alleged identity of officers, directors and shareholders, and because they have the same address as their principal place of business. Further, TJS alleges that Hanover funds Garden State and provides it with labor, Garden State allegedly having no employees of its own.

In turn, Hanover contends that it does not have identical shareholders with Garden State, that it does have its own employees, and that it and Garden State are not identical since they have very different principal businesses. Further, Hanover contends that it does not advertise in Pennsylvania, rather, it ships liquor to the Pennsylvania Control Board only at the direction of the owners of the goods it stores, and Hanover's employees perform very limited administrative functions for Garden State.

TJS has the burden to prove that Garden State and Hanover are identical entities. *Publicker Industries v. Roman Ceramics*, 603 F.2d 1065, 1069 (3d Cir.1979); *Kaplan v. First Options of Chicago Inc.*, 19 F.3d 1503, 1521 (3d Cir.1994). In order to meet this burden, TJS must show that the independence of the two entities has been disregarded. *Clark v. Matsushita Elec. Indus.* 811 F.Supp. 1061, 1068 (M.D.Pa.1993). TJS must also show that Hanover was doing acts which benefitted Garden State and which Garden State would otherwise have had to do by itself. *Gallagher v. Mazda Motor of America*, 781 F.Supp. 1079, 1085 (E.D.Pa. 1992); *Lasky v. Continental Prods. Corp.*, 569 F.Supp. 1225, 1227 (E.D.Pa.1983); *Gavigan v. Walt Disney World, Inc.*, 646 F.Supp. 786, 788 (E.D.Pa.1986). Further, TJS must prove that the identity of interests between the two corporations was also manifested by a failure to follow corporate formalities. *Reverse Vending Assoc. v. Tomra Sys., Inc.*, 655 F.Supp. 1122, 1128 (E.D.Pa.1987).

TJS has not met its burden of proving that Garden State and Hanover are alter egos. TJS has not alleged that Garden State and

Hanover failed to follow corporate formalities or that Hanover performed functions that benefitted Garden State and which Garden State would otherwise have to perform itself. There is no allegation that by breaching the Cost Control contract, Hanover's business, as opposed to Garden State's business, was benefited. For this reason, we do not base jurisdiction over Hanover based on Garden State's acts. We therefore must consider jurisdiction over Hanover based on the allegations directed to it personally.

■ TJS alleges that Hanover regularly deals with Garden State, which regularly conducts business in Pennsylvania, and also that Hanover regularly deals through Garden State to conduct business in Pennsylvania. Hanover allegedly deals regularly with Garden State's sales force, including giving Garden State funds to pay its salesmen. Further, Hanover regularly stores goods belonging to Garden State's Pennsylvania-based customers, and goods it stores are regularly sent to Pennsylvania by Garden State.

We find that this is not enough to make Hanover subject to personal jurisdiction in Pennsylvania. TJS has not alleged that Hanover has direct ties to Pennsylvania on its own, as opposed to contacts which Garden State has that TJS has attributed to Hanover. Even if Garden State created its Pennsylvania ties, by paying for Garden State's Pennsylvania sales force, this is only an indirect contact by Hanover with Pennsylvania. Further, whether Hanover's customers sent products into Pennsylvania from Hanover's warehouse does not demonstrate any affirmative act by Hanover itself to enter into Pennsylvania. What Hanover's customers do with their goods once they are removed from Hanover's warehouse is not within Hanover's control. We will not attribute Hanover's customers' actions to Hanover. Instead, we find that there is no general personal jurisdiction over Hanover in Pennsylvania.

### 2. *Specific Jurisdiction*

■ TJS bases specific jurisdiction over Hanover in part on the theory that Hanover's acts caused economic harm to TJS in Pennsylvania. 42 Pa.Cons.Stat.Ann.

§ 5322(a)(3) and (4). TJS also bases jurisdiction on the allegations that through Garden State, and/or Cost Control, Hanover tortiously interfered with TJS's Pennsylvania-based customers, shippers and agents.

There are no allegations that Hanover itself, as opposed to Hanover through Garden State, acted to cause injury in Pennsylvania. Unlike *Carteret Savings Bank v. Shushan,* 954 F.2d 141, 147–48 (3d Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992), for example, there are no allegations that Hanover made any phone calls into the forum, entered into the forum at any time or took any other voluntary actions in Pennsylvania from which it could be reasonably said that "traditional notions of fair play and substantial justice" are met. *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. For this reason, we find that Hanover is not subject to specific personal jurisdiction in Pennsylvania.

In the alternative, TJS has requested the opportunity to conduct discovery on the issue of jurisdiction. Motions to dismiss for lack of jurisdiction are frequently resolved after an opportunity for discovery. *See e.g., Provident,* 819 F.2d at 438; *Modern Mailers,* 844 F.Supp. at 1051. We will therefore grant this motion as to Defendant Hanover since we are at an early stage in the litigation.

### II. *MOTION TO TRANSFER*

■ In the alternative, defendants seek to transfer venue to the Southern District of New York or to the District of New Jersey pursuant to 28 U.S.C. § 1631 ("section 1631"). Since we have decided to allow plaintiffs to conduct discovery as to Defendant Hanover, it is premature for us to consider a motion to transfer as to that defendant. Nevertheless, as we have determined that Defendants Mahoney and Garden State are subject to this Court's jurisdiction, we consider this motion only as to those defendants.

In support of their motions to transfer, defendants allege that their documents and most of their witnesses are located outside Pennsylvania and therefore Pennsylvania is

not as convenient a forum as either New York or New Jersey.

Defendants have not met their burden under section 1631. As a resident plaintiff, TJS's choice of forum is accorded great deference and defendants have the burden of proving the necessity of transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). TJS asserts that its witnesses and documents are in Pennsylvania. Defendants have not shown any special reason for transfer, they have only alleged that it is more convenient for them to conduct the trial in their home states, ignoring the fact that it is more convenient for the resident plaintiff in this case to conduct the trial here. Defendants have therefore failed to meet their burden to show that this case should be transferred.

### III. CONCLUSION

Based upon the above, the Motions to Dismiss for Lack of Personal Jurisdiction and Motions to Transfer of Defendants Mahoney and Garden State are denied. Discovery will be conducted within thirty days as to Defendant Hanover to determine if a sufficient basis for jurisdiction exists.

An appropriate Order follows.

### ORDER

AND NOW, this 18th day of September, 1996, upon consideration of the Motion of Defendant Thomas P. Mahoney to Dismiss the complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the Alternative to Transfer Venue, and responses thereto, the Motion is hereby DENIED.

Upon consideration of Garden State Consolidating, Inc.'s Motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to Dismiss the complaint for Lack of Jurisdiction and in the alternative, to Transfer Venue, and responses thereto, the Motion is hereby DENIED.

FURTHER, upon consideration of Defendant Hanover Warehouse Inc.'s Motion to Dismiss the complaint for Lack of Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and in the alternative to Transfer Venue, resolution of both motions is hereby STAYED and Plaintiff TJS Brokerage & Co., Inc. has thirty days to conduct discovery limited to the resolution of the issue of jurisdiction over Defendant Hanover.