**AIRCRAFT GUARANTY CORPORATION,**
Plaintiff,

v.

**STRATO-LIFT, INC. and Kenneth F. Goodrich d/b/a K.F. Goodrich Associates, Inc., Defendants,**

v.

**Bernard VAN MILDERS, and Bernard Van Milders, b.v., Defendants on the Counterclaim.**

Civil Action No. 96–5513.

United States District Court, E.D. Pennsylvania.

July 28, 1997.

B. Edward Williamson, J.W. Beverly, Dow, Cogburn and Friedman, P.C., Houston, TX, Anthony L. Marchetti, Jr., Hunt & Scaramella, P.C., Cherry Hill, NJ, for Plaintiff.

Richard G. Placey, Richard M. Donaldson, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

On April 10, 1996, Plaintiff Aircraft Guaranty Corporation ("AGC") filed this lawsuit alleging that Defendants Strato–Lift, Inc. ("SLI") and Kenneth F. Goodrich d/b/a K.F. Goodrich Associates, Inc. ("Goodrich") breached a contract for the sale of a used business jet. The action was removed to the United States District Court for the Southern District of Texas, Houston Division, which granted AGC's Unopposed Motion to Transfer Venue to this Court on July 22, 1996. Subject matter jurisdiction is proper under 28 U.S.C. § 1332.

SLI and Goodrich filed their answer to AGC's Amended Complaint on January 6, 1997. In this pleading, SLI and Goodrich also asserted breach of contract, misrepresentation and estoppel counterclaims against Plaintiff AGC and two additional parties, Mr. Bernard Van Milders ("Van Milders") and Bernard Van Milders, b.v. ("BVM").[1] Van Milders and BVM moved to dismiss the counterclaims for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on March 21, 1997. According to a stipulation of the parties, we have deferred ruling on the instant motion to allow Mr. Van Milders' deposition to be completed and additional relevant materials to be submitted for our consideration. For the reasons stated below, we decide today that the motion must be denied.

## BACKGROUND

Van Milders is a resident of Antwerp, Belgium, and owner of BVM, a Belgian company that buys, sells and leases airplanes. In late 1995, Van Milders learned of a potential customer's interest in purchasing an "as good as new" Cessna Citation or Citation II business jet. In mid-December 1995, Van Milders enlisted Mr. Connie Wood ("Wood"), the President of AGC—a Delaware corporation with its principal place of business in Houston—to locate a plane suitable for resale to this customer. Wood, who was then working out of AGC's office in Germany, and Van Milders executed no written agency or joint venture agreement at this time.

The first plane located by Wood was a Cessna Citation II, serial number 550–0716 (the "Cessna 716"), owned by Mr. Bruce Taylor ("Taylor") of Penn–Aire Aviation, Inc. ("Penn–Aire") in Franklin, Pennsylvania. Wood and Van Milders initiated contact with Taylor and Penn–Aire and negotiations en-

sued, but their eventual offer to purchase the Cessna 716 was not accepted.

As negotiations for the Cessna 716 faltered, Wood and Van Milders became interested in a Cessna Citation II, serial number 550–0725 (the "Cessna 725"), owned by SLI, a Pennsylvania corporation with its principal place of business in Morgantown, Pennsylvania.[2] Wood made an initial inquiry regarding the Cessna 725 on December 18, 1995, via fax to Kenneth Goodrich, whom SLI had retained to broker the sale of the jet. Goodrich was then doing business as K.F. Goodrich and Associates, Inc., a dissolved corporation formerly incorporated in Connecticut. Wood's fax indicated that he was inquiring on behalf of an unidentified trust client, later identified as BVM. Goodrich and Wood then exchanged a series of faxes over the next few days between Goodrich's office in Connecticut and Wood's office in Germany regarding the Cessna 725. On December 27, 1995, Wood faxed an offer to Goodrich in which AGC, "[o]n behalf of [its] trust client, Bernard Van Milders B.V." agreed to purchase the plane for $3,500,000, subject to certain conditions. This fax, which is signed by Wood and Goodrich and does not identify SLI as the Cessna 725's owner, is the contract sued on in this case.

Neither Van Milders nor Wood ever communicated directly with SLI (or anyone in Pennsylvania) at any point during the Cessna 725 negotiations and, in fact, Van Milders never even spoke directly to Goodrich. Nonetheless, Goodrich states that "[t]here is no question that AGC was told, orally and in writing that the [Cessna 725] which it was buying as Van Milders' agent was owned by [SLI] ... and was located in Pennsylvania." Goodrich Declaration, App. in Supp. of Defs.' Opp'n. to Mot., Tab 4, ¶ 10. Goodrich explains that "it is [his] usual practice to dis-

---

1. Though Van Milders testified that the company's name is actually "B. Van Milders N.V.," it is identified either as "Bernard Van Milders, b.v.," or "Bernard Van Milders B.V." in the various documents relating to the contract sued on in this case. As will become clear *infra*, this inconsistency is important to one part of our legal analysis. For the sake of convenience, however, we use the abbreviation "BVM" throughout this Memorandum to identify the corporate entity

regardless of how the parties have referred to it in a given context.

2. We described the negotiations for the sale of the Cessna 725 in our January 17, 1997, Memorandum in this matter, published at 951 F.Supp. 73 (E.D.Pa.1997) (granting Defendants' Motion for Partial Summary Judgment on AGC's attorney's fees claim based on choice of law), so we will do so only briefly here.

close the identity of the seller and location of the airplane" and that he "know[s]" that he did so orally on several occasions in this case. *Id.* at ¶¶ 4, 9. Goodrich also points to the following written correspondence: two faxes sent to Wood indicating that the Cessna 725 "spent time in" Pennsylvania and Florida; a Cesscom 10–Aircraft Status report faxed to Wood on December 19, 1995, identifying SLI as the plane's owner; a December 27, 1995, fax referring to Jim Ridings (of SLI) as the plane's owner; and a December 30, 1995, fax to Wood stating that the plane would be flown from Pennsylvania to the prepurchase inspection facility. Goodrich also states that he and Wood had a conversation regarding the cost of this flight. *Id.* at ¶ 10.

As we explain in our previous Memorandum in this matter, *see* 951 F.Supp. at 76, AGC filed this lawsuit after disputes arose concerning the scope and duration of the prepurchase inspection (which occurred in Alabama) prompting SLI to terminate the inspection. *AGC* filed the suit—even though Wood negotiated and entered into the contract on behalf of BVM—as a result of two agreements it has with BVM. The first is a Joint Venture & Agency Agreement (the "Joint Venture Agreement") which authorizes Wood "to act as agent in those matters necessary to execute the purchase of [Cessna 716 or Cessna 725] (or other aircraft mutually designated)...." This agreement authorized Wood, *inter alia,* to spend or obligate money and sign "necessary sales contract documents for the purchase on behalf of [BVM]...." The cost of all monies expended was to be shared equally by AGC and BVM, "with the exception of the provisioning and interest cost of the monies for payment of the final purchase price of the aircraft which shall be the responsibility of [BVM]." AGC and BVM would also share equally in any profits generated by the syndication or sale of the purchased aircraft.

The second agreement assigns to AGC all of BVM's rights against SLI and Goodrich for the alleged breach of contract. This agreement (the "Assignment Agreement") was strictly an oral understanding between Wood and Van Milders until sometime in the spring of this year, approximately one year after AGC instituted this action, when the agreement was reduced to writing. In the written Assignment Agreement, retroactively made effective March 1, 1996, "BVM ... assigns to AGC all rights and claims held by each of them to recover against any parties who may be liable for damages, in tort or in contract, in connection with the breach of the agreement to purchase the [Cessna 725] from [SLI]." No mention is made either of (1) any assignment of liabilities or (2) the oral agreement that both Wood and Van Milders testified to in their depositions that BVM would share equally in any recovery obtained by AGC.

## DISCUSSION

### I. Legal Standard

 Once a defendant raises a personal jurisdiction defense, the burden of establishing the court's jurisdiction rests with the plaintiff. *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). Prior to trial, however, a plaintiff need only make a prima facie showing of jurisdiction. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). Factual disputes created by the affidavits, documents and depositions submitted for the court's consideration are resolved in favor of the non-moving party. *Friedman v. Israel Labour Party,* 957 F.Supp. 701, 706 (E.D.Pa.1997).

Under Fed.R.Civ.P. 4(e), we apply Pennsylvania law to determine whether personal jurisdiction is proper. Pennsylvania's long-arm statute, in turn, authorizes both general and specific jurisdiction to the "fullest extent allowed under the Constitution of the United States." 42 Pa. Cons.Stat. Ann. § 5322(b)(Purdon's 1981). Thus, because Pennsylvania's "reach is coextensive with the limits placed on the states by the federal Constitution," *Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products Company,* 75 F.3d 147, 150 (3d Cir.1996), we apply the familiar two-part test recently summarized by our Court of Appeals as follows:

First, the defendant must have made constitutionally sufficient 'minimum contacts'

with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 [105 S.Ct. 2174, 2183, 85 L.Ed.2d 528] (1985). The determination of whether minimum contacts exist requires an examination of the 'relationship among the forum, the defendant and the litigation,' *Shaffer v. Heitner*, 433 U.S. 186, 204 [97 S.Ct. 2569, 2579, 53 L.Ed.2d 683] (1977), in order to determine whether the defendant has " 'purposefully directed' " its activities towards residents of the forum. *Burger King*, 471 U.S. at 472 [105 S.Ct. at 2181–82] (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, [104 S.Ct. 1473 1478 79 L.Ed.2d 790] (1984)). There must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla*, 357 U.S. 235, 253 [78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283] (1958). Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.' *International Shoe Co. v. Washington*, 326 U.S. 310, [66 S.Ct. 154, 90 L.Ed. 95] (1945). *Vetrotex*, 75 F.3d at 150–151. In this case, we need address only whether we may exercise specific jurisdiction over BVM and Van Milders. " 'Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities' such that the defendant 'should reasonably anticipate being haled into court there.' " *Id.* at 151 (quoting *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir.1990) and *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)). SLI and Goodrich do not argue that either BVM or Van Milders has sufficient contacts with Pennsylvania to give rise to general jurisdiction. *See* 42 Pa. Cons.Stat. Ann. § 5301; *Vetrotex*, 75 F.3d at 151 n. 3.

## II. Application of Standard to this Case

SLI and Goodrich argue that we have specific jurisdiction over both BVM and Van Milders as a result of three sets of contacts with Pennsylvania: (1) the negotiations with Taylor for the purchase of the Cessna 716; (2) the negotiations and eventual contract to purchase the Cessna 725; and (3) BVM's assignment of its rights under the contract with SLI to AGC and the decision to transfer this lawsuit to this Court. We address the first two contentions in our minimum contacts analysis and the third in our discussion of principles of fair play and substantial justice.

### A. Minimum Contacts

SLI and Goodrich contend that Van Milders' and BVM's ultimately unsuccessful efforts to purchase the Cessna 716 from Taylor count towards the minimum contacts required to assert jurisdiction in this case. SLI and Goodrich emphasize Van Milders' direct communications with Taylor as evidence of purposeful availment of this forum. In order to count for specific jurisdiction purposes, however, the cause of action must " 'arise[ ] out of' or 'relate[ ]' to the defendant's contacts with the forum." *Id.* at 153 (quoting *Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8). Thus, in *Vetrotex*, a breach of contract action, the Third Circuit rejected the plaintiff's argument that the defendant's prior dealings with a third Pennsylvania corporation (of which the plaintiff later became a wholly owned subsidiary) should be considered in the minimum contacts analysis. The court reasoned that *"Burger King* 's reference to 'prior negotiations,' 'future consequences,' 'terms of the contract,' and 'course of dealing,' however, clearly contemplates *dealings between the parties in regard to the disputed contract,* not dealings unrelated to the cause of action." *Id.* (emphasis in original). Likewise, in this case, any dealings with Taylor and Penn–Aire regarding the Cessna 716 are irrelevant because the counterclaims asserted here arose from dealings that BVM and Van Milders had with SLI and Goodrich.

We proceed with the remainder of our minimum contacts discussion by addressing BVM and Van Milders separately.

### 1. BVM

The affidavits, documents and deposition testimony submitted for our consideration

reveal no direct contact with Pennsylvania on BVM's part during the negotiations for the purchase of the Cessna 725. Instead, any and all contacts with Pennsylvania were made by Wood acting on BVM's behalf. AGC's acts on behalf of BVM may, however, be attributed to BVM for jurisdictional purposes. The Pennsylvania long arm statute explicitly provides for jurisdiction "over a person ... who acts directly or by an agent...." 42 Pa. Cons.Stat. Ann. § 5322(a)(Purdon's 1981 & Supp. 1997); *see also C.J. Betters Corporation v. Mid South Aviation Services, Inc.,* 407 Pa.Super. 511, 595 A.2d 1264, 1269 (1991) ("Under 42 Pa. C.S.A. § 5322, the long arm statute provides that jurisdiction over a person may be based upon the acts of his agent."). Moreover, federal courts have consistently held that exercising jurisdiction over a principal for the acts of its agent comports with constitutional due process. *Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476, 483 (3d Cir.1993); *Mellon Bank,* 960 F.2d at 1226 n. 5 ("Defendants also argue that the contacts of their agent with the forum state cannot be attributed to them. This argument has been roundly rejected."); *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990) ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."); *Creech v. Roberts,* 908 F.2d 75 (6th Cir.1990); *Williamson v. Petrosakh Joint Stock Co.,* 952 F.Supp. 495, 498 (S.D.Tex.1997).

■ The question we must decide, therefore, is whether AGC's contacts with Pennsylvania are sufficient to exercise jurisdiction over BVM. The mere existence of a contract with an out-of-state party does not automatically establish personal jurisdiction over that party. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. The contract for the purchase of the Cessna entered into by AGC on BVM's behalf therefore does not itself confer jurisdiction. "The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings by the parties." *Mellon Bank,* 960 F.2d at 1223 (citing *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185–86); *see also Vetrotex,* 75 F.3d at 151. The Third

Circuit has instructed employing "a 'highly realistic' approach" when considering these factors. *Id.* at 1224 (citing *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185–86).

■ The relevant facts are as follows. Wood initiated the first contact regarding the Cessna 725. This contact was a fax directed to SLI's agent, Goodrich, in Connecticut. All subsequent communications between SLI and BVM occurred via fax and phone between their respective agents (Goodrich in Connecticut and Wood in Germany). In fact, at no time during the negotiations that followed did Wood (or Van Milders, for that matter) ever speak directly with any SLI employee or visit Pennsylvania to see the plane. Nonetheless, resolving factual disputes in the record in favor of the nonmovant, Goodrich informed Wood numerous times during the course of their dealings both that SLI owned the plane and that it was hangered and maintained in Pennsylvania. Wood's knowledge is imputed to BVM by virtue of its agency relationship with AGC. *See Workmen's Comp.App. Bd. v. Evening Bulletin,* 498 Pa. 219, 445 A.2d 1190, 1192 (1982)("It is well settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, and therefore, knowledge of the agent is knowledge of the principal.") (citations omitted). Further, certain contemplated future consequences of the contract—receipt of the purchase price by the Pennsylvania owner, delivery of the plane from Pennsylvania to the prepurchase inspection site—constitute additional contacts with this forum.

We agree with SLI and Goodrich that such contacts are at least as substantial as those held sufficient in *C.J. Betters,* 407 Pa.Super. 511, 595 A.2d 1264, another breach of contract action involving the sale of an airplane. In *C.J. Betters,* a Pennsylvania plaintiff contracted with a Florida broker to purchase an airplane owned by a North Carolina man. The plaintiff initiated the contact with the Florida broker, all of the negotiations took place either face-to-face in Florida or via letters and phone calls between Florida and Pennsylvania, and the contract was executed

**474**

by the plaintiff in Pennsylvania and the Florida broker in Florida. *Id.* at 1265. The Superior Court reversed the lower court's dismissal of the Florida broker for lack of jurisdiction because the broker "knew that the aircraft would be used by the Pennsylvania purchaser in Pennsylvania ... [and] the contract provided that [the Florida broker] deliver the aircraft to Pennsylvania for final inspection and acceptance." *Id.* at 1267–68. The court also held that jurisdiction over the North Carolina owner was proper based on the broker's contacts in addition to the fact that the owner "knew the aircraft was to be sold to a Pennsylvania corporation and willingly accepted a check for the purchase price of the plane...." *Id.* at 1269. We find AGC's conduct in the instant case more purposefully directed towards Pennsylvania than was the defendants' in *C.J. Betters* because AGC (on BVM's behalf) sought out Goodrich (acting on SLI's behalf), initiated the negotiations, and actively pursued them with the knowledge that the plane had a Pennsylvania owner and was kept in Pennsylvania.

*Furnival Machinery Company v. Joseph T. Barta Associates, Inc.*, 470 F.Supp. 735 (E.D.Pa.1979), yet another airplane case, also weighs in favor of exercising jurisdiction. *Furnival* concerned a three-way transaction involving the following steps: (1) the Pennsylvania plaintiff would send cash and an airplane to an Illinois third party; (2) the Illinois party would keep the plane and deliver the cash to the New York defendant; and (3) the New York defendant would keep the cash and deliver a second plane to the Illinois party, who performed various repairs on the second plane before delivering it to the Pennsylvania plaintiff. Negotiations for this deal were initiated by the Pennsylvania plaintiff and conducted either by phone with the various parties or face-to-face in Connecticut, where the second plane was located. The court found that it had jurisdiction over the New York defendant based on his knowledge that the second plane would end up in Pennsylvania and that the purchase price had ultimately been paid by the plaintiff. *Id.* at 739. "By taking part in this transaction,

knowing that its airplane would shortly wind up in Pennsylvania, [the defendant] 'purposefully avail(ed) itself of the privilege of conducting activities within the forum state.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240). Likewise, in this case, AGC (on behalf of BVM) initiated and knowingly entered a transaction for the purpose of purchasing a plane located in Pennsylvania from a Pennsylvania owner.

We therefore conclude that BVM had sufficient contacts with Pennsylvania by virtue of its agency relationship with AGC such that it could reasonably anticipate being haled into this Court.

### 2. Van Milders

Van Milders argues that we lack personal jurisdiction over him because "he had no involvement in his individual capacity with the transaction at issue in this lawsuit." Mem. in Supp. of Mot. at 15. As we have recently stated, a defendant is generally not individually subject to personal jurisdiction merely based on his actions in a corporate capacity, though he may be under some circumstances. *TJS Brokerage & Co., Inc. v. Mahoney*, 940 F.Supp. 784, 789 (E.D.Pa. 1996); *see also Beistle Co. v. Party U.S.A., Inc.*, 914 F.Supp. 92, 95–96 (M.D.Pa.1996).

SLI and Goodrich argue that jurisdiction is proper over Van Milders individually "because it is obvious that [he] was acting individually or, at best, acting on behalf of purported corporations which he now admits simply do not exist." Supp. Br. in Opp. to Mot. at 8. In particular, SLI and Goodrich note that whereas both the contract and the Assignment Agreement refer to "Bernard Van Milders B.V." and the Joint Venture Agreement refers to "Bernard Van Milders b.v.," Van Milders testified in his deposition that no such entity by either name exists. Van Milders Dep. at 6–7 and 76–77. Instead, the name of Van Milders' company is actually "B. Van Milders N.V.," *Id.* at 6–7, which is the name that appears in the caption of the instant motion.[3]

---

**3.** Van Milders explained that "N.V." is a Belgian corporate designation meaning "Naamloze Vennootschap." *Id.* at 6.

We disagree that such discrepancies render it "obvious" that Van Milders was acting in an individual capacity. Nevertheless, as we have noted, factual disputes created by the affidavits, documents and depositions submitted for the court's consideration are resolved in favor of the non-moving party when deciding a 12(b)(2) motion. *Friedman,* 957 F.Supp. at 706. Based on the record now before us, we find a factual dispute as to whether AGC was acting as an agent for some corporate entity (referred to throughout this Memorandum as "BVM") or for Van Milders individually. We therefore find that AGC's contacts may also be imputed to Van Milders individually such that SLI and Goodrich have established a *prima facie* case of jurisdiction over him in his individual capacity.

### B. Fair Play and Substantial Justice

We group Van Milders and BVM together for the second prong of our jurisdictional analysis, in which we may examine, *inter alia,* "the burden on the defendant, the forum State's interest in adjudicating the dispute, [and] the plaintiff's interest in obtaining convenient and effective relief." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). Because SLI and Goodrich have established a *prima facie* case of jurisdiction, the burden shifts to Van Milders and BVM to " 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " *Mellon Bank,* 960 F.2d at 1226 (citations omitted).

Not only has BVM presented no such case, but the instant facts create a compelling case to the contrary. As discussed *supra,* BVM has assigned its rights under the contract with SLI to AGC, enabling AGC to bring this suit. AGC then voluntarily moved to transfer the action to this Court from Texas. Further, both Wood and Van Milders testified in their depositions to an oral agreement that BVM will share equally in any recovery that results from this litigation, though there is nothing in writing to this effect. BVM did not, however, assign its contractual liability to AGC, possibly in an attempt to insulate itself from the very counterclaims that SLI and Goodrich have asserted. We agree with SLI and Goodrich that such an arrangement creates a "heads I win, tails you lose" proposition that runs fundamentally contrary to traditional notions of fair play. Finally, BVM's and Van Milders' argument that "[i]t would entail considerable expense and lost time for Mr. Van Milders and [BVM] to defend themselves in Pennsylvania" is not persuasive given that they appear also to be represented by AGC's counsel and that Van Milders has already been deposed in this matter. Thus, exercising jurisdiction over both Van Milders and BVM comports with traditional notions of fair play and substantial justice.

An appropriate Order follows.

### ORDER

AND NOW, this 28th day of July, 1997, upon consideration of Bernard Van Milders' and B. Van Milders N.V.'s Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 20), and the Opposition and Supplemental Opposition thereto, it is hereby ORDERED that the Motion to Dismiss is DENIED.