**UNITED PRODUCTS CORPORATION, et al., Plaintiffs,**

v.

**ADMIRAL TOOL & MANUFACTURING CO., et al., Defendants.**

No. Civ.A. 00–1552.

United States District Court,
E.D. Pennsylvania.

Nov. 28, 2000.

Alan Frank, Lance Rosen, Michael P. Clarke, Frank & Rosen, Michael Clarke, Frank & Rosen, Philadelphia, PA, for Plaintiffs.

Steven R. Waxman, Mary V. Slinkard, Kleinbard, Bell & Brecker LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

This is a commercial contract case brought by Plaintiffs United Products Corporation ("UPC") and Joseph Egan ("Egan") against Defendants Admiral Tool & Manufacturing Company ("Admiral"), Ernie Levine ("Levine"), and William Dugan ("Dugan"). In their Amended Complaint, Plaintiffs allege five counts, including: violation of the Pennsylvania Commissioned Sales Representatives Act ("CSRA"), 43 P.S. § 1471, *et seq.* (Count I); violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.* (Count II); request for an accounting and punitive damages (Count III); fraud (Count IV); and breach of contract (Count V). Presently before the Court is Defendants' Motion to Dismiss Counts I, II, and IV or Alternatively to Transfer. For the reasons below, we will grant Defendants' Motion in part and deny it in part.

## BACKGROUND

Taken in the light most favorable to Plaintiffs, the relevant facts are as follows. Admiral is an Illinois corporation that manufactures, among other things, seating for the mass transit industry. Levine and Dugan are the President and Vice–President of Admiral respectively. UPC is a Pennsylvania corporation and is principally owned by Egan. In January 1993, UPC and Admiral entered into an Agreement of Representation ("the Agreement") through which UPC and Egan became the exclusive sales representatives for Admiral's products. The Agreement was for one year and was to be automatically renewed for one year unless canceled by either party with thirty-days written notice. Under the Agreement, Admiral agreed to pay UPC a 5–percent commission on each product order UPC obtained.

In May or June 1999, Dugan informed UPC that Admiral was having financial difficulties. In view of Admiral's problems, UPC agreed to reduce the rate of its commissions. Nonetheless, in November 1999, Admiral notified UPC that it was terminating the Agreement effective January 6, 2000. Following Admiral's termination notice, UPC contacted Admiral on

several occasions regarding past commissions and other information that were still owed to UPC under the terms of the Agreement. After their repeated letters and telephone calls went unanswered for several months, UPC and Egan filed a complaint with this Court in March 2000. They subsequently amended that complaint in June 2000.

## DISCUSSION

### I. *Claim Against Levine and Dugan*

In Count II, Plaintiffs allege a violation of the WPCL. Significantly, this is the only count that names Levine and Dugan as individual Defendants. Defendants argue that the "fiduciary shield" doctrine precludes this Court's exercise of personal jurisdiction over Levine and Dugan. Further, Defendants assert that if we dismiss the claim against Levine and Dugan, we should then transfer the entire case to the Northern District of Illinois. While we agree that the fiduciary shield precludes jurisdiction over the individually named Defendants, we believe that transfer of this entire action is premature at this time.

### A. *Personal Jurisdiction and the Fiduciary Shield*

■ In general, a court does not have personal jurisdiction over an individual defendant whose only contacts with the forum state were taken in his or her corporate capacity. *TJS Brokerage & Co. v. Mahoney*, 940 F.Supp. 784, 789 (E.D.Pa. 1996); *National Precast Crypt Co. v. Dy-Core*, 785 F.Supp. 1186, 1191 (W.D.Pa. 1992); *see also Andrews v. CompUSA, Inc.*, Civ. A. No. 99–3240, 2000 WL 623234, at *2 (E.D.Pa. May 15, 2000). This general rule, however, does not apply when the corporate officer is charged with (1) committing a tort in his corporate capacity or (2) violating a statutory scheme that provides for personal, as well as corporate, liability for corporate actions. *See National Precast Crypt*, 785 F.Supp. at 1191. Likewise, a court may disregard the fiduciary shield if the defendant "had a major role in the corporate structure, the quality of his contacts with the state were significant, and his participation in the tortious conduct was extensive." *TJS Brokerage*, 940 F.Supp. at 789 (citation omitted).

■ In this case, the number and extent of Levine and Dugan's contacts with Pennsylvania are undisputed.[1] In addition, it is undisputed that all of the contacts by Levine and Dugan were taken within their corporate capacities at Admiral. Plaintiffs do not allege that Levine or Dugan committed a tortious act while acting in their corporate capacities. Moreover, regardless of whether Levine and Dugan may be liable under the WPCL, their potential liability is not sufficient to subject them to personal jurisdiction in Pennsylvania. *E.g., Andrews*, 2000 WL 623234, at *2; *Sneberger v. BTI Americas, Inc.*, No. Civ. A. 98–932, 1998 WL 826992, at *4 (E.D.Pa. Nov. 30, 1998); *Schommer v. Eldridge*, Civ. A. No. 92–3372, 1992 WL 357557, at *2 (E.D.Pa. Nov. 30, 1992). Finally, while Levine and Dugan certainly have a major role in Admiral's corporate structure, there is no indication that the quality of their contacts was significant or that their role in any tortious activity was extensive.

We find that all of Levine or Dugan's contacts with Pennsylvania were made within their corporate capacities and that, as a result, they are protected by the fiduciary shield doctrine. As none of the exceptions to that doctrine apply in this case, Levine and Dugan are not subject to the personal jurisdiction of this Court.

1. Levine made four trips to Pennsylvania. On two occasions, one in 1994 and one in 1995, Levine traveled to Pennsylvania to meet with UPC officials. In 1996, he made his third and fourth trips to Pennsylvania. The first time he came to Pennsylvania to attend a transit industry dinner and, later that year, he came a second time to observe some mass transit seats that Admiral had provided to the Southeastern Pennsylvania Transit Authority ("SEPTA"). In contrast, Dugan made only one trip to Pennsylvania, which occurred in 1996 when he attended an introductory meeting between Admiral and UPC.

Accordingly, we will dismiss Count II without prejudice as to Levine and Dugan.

### B. *Appropriateness of Transfer*

Having dismissed Count II with respect to Levine and Dugan for lack of personal jurisdiction, the Court must next determine the most just and efficient manner to proceed with the remainder of the case. In this circumstance, we are left with two options: (1) to transfer the entire case to another district where jurisdiction may be exercised over all Defendants or (2) to sever the claims, retaining jurisdiction over UPC and transferring the case as to Levine and Dugan to a proper forum. *See Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 296 (3d Cir.1994) (describing court's options when venue is proper for one defendant but not for another). Guiding our choice of alternatives is the United States Court of Appeals for the Third Circuit's position "that [the court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Id.* (quoting *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 33–34 (3d Cir.1993).) The Third Circuit further explained that "[w]hen the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion." *Id.* (directing district court to transfer case in which court had venue over corporation but not over sole owner of corporation); *see also* 28 U.S.C. §§ 1404(a), 1406(a); *Andrews,* 2000 WL 623234, at *3 & n. 5 (transferring in lieu of

dismissing case where court had no jurisdiction over some co-defendants).

■ Defendants argue persuasively that the conduct of UPC, Levine, and Dugan are thoroughly intertwined and that all of Plaintiffs' claims arise out of the same series of events. As such, Defendants assert that a second, largely identical action filed against Levine and Dugan would waste judicial resources, inconvenience witnesses, and unfairly force Defendants to defend the same action twice. Plaintiffs counter that their choice of forum is entitled to great weight and that venue need not be in the best place but only an appropriate place. (Pltf. Resp. at 8–9).

Although Defendants' arguments regarding judicial economy and inconvenience may still prove well-founded, we find them premature at this time. Aside from the claims against the individual Defendants in Count II, all of Plaintiffs' remaining claims survive, at least for jurisdictional and venue purposes.[2] These remaining claims constitute the bulk of Plaintiffs' Complaint, and they are properly before this Court. Defendants' fear of duplicative litigation and inconvenience rests on their assumption that Plaintiffs will initiate a second action against Levine and Dugan in a proper forum. If that assumption materializes, Defendants may refile an appropriate motion, and we will consider the merits of their request at that time. For now, however, neither Defendants nor the Court has been subject to any unfair inconvenience, and we see no justification for overturning Plaintiffs' choice of forum on strictly hypothetical grounds.[3] Accordingly, we will deny Defendants' Motion to Transfer.

2. Defendant does not argue that jurisdiction or venue is lacking over Admiral. We address Defendants' other arguments for dismissal of Counts I, II, and IV on substantive grounds *infra* Part II.

3. As Defendants note, the Court in *Andrews,* 2000 WL 623234, transferred its entire case to another district after finding that personal

jurisdiction was lacking over one defendant. *See id.* at *3–*4. However, the present case is distinct from *Andrews* in at least one important respect: here Plaintiffs clearly do not want the case transferred, whereas in *Andrews* the plaintiff actually *requested* that the Court transfer his case rather than dismiss it. *See id.* at *3.

## II. Claims Against Admiral

### A. The CSRA

Turning to the allegations against Admiral, Defendants move to dismiss Plaintiffs' CSRA claim in Count I for failure to state a claim upon which relief can be granted. Specifically, Defendants argue that they are not "sales representatives" as defined by the CSRA. The CSRA states that a sales representative is "[a] person who contracts with a principal to solicit wholesale orders from *retailers* rather than consumers...." 43 P.S. § 1471 (emphasis added). Based on that statutory definition, Defendants argue that they cannot be sales representatives because UPC never contracted with Admiral (the principal) to solicit wholesale orders from retailers. Thus, whether Admiral is a sales representative turns on whether, under the terms of the Agreement, UPC was soliciting retailers.

Defendants maintain that the plain terms of the Agreement indicate that "Plaintiffs' representation of Admiral was limited to 'transit agencies' and 'rail car builders'" and that "neither of those types of entities can be considered a retailer." (Mot. at 15). For their part, Plaintiffs do not dispute the terms of the Agreement, but rather argue that transit agencies are, in fact, retailers as contemplated by the CSRA. (Resp. at 10). As an example, Plaintiffs cite SEPTA, arguing that SEPTA is a retailer because it sells to riders who must pay a fee to ride SEPTA vehicles, and these riders are the ultimate consumers. (*Id.*).

█ In determining the meaning of "retailers," the Court's task is complicated by the lack of any statutory definition of that term. Nevertheless, we abide by "the basic rule of statutory construction that words are to be given their 'plain and ordinary meaning.'" *Commonwealth v. Cappellini,* 456 Pa.Super. 498, 690 A.2d 1220, 1224–25 (1997) (quoting *Commonwealth v. Berryman,* 437 Pa.Super. 258, 649 A.2d 961 (1994) (en banc), *appeal denied,* 541 Pa. 632, 663 A.2d 685 (1995)). In the instant case, we think it clear that the plain and ordinary meaning of the term "retailer" does not encompass transit agencies, rail car builders, or transit authorities like SEPTA.

The term "retailer" is defined as "[a] person engaged in making sales to ultimate consumers. One whom sells personal or household goods for use or consumption." *Black's Law Dictionary* 1315–16 (6th ed.1990); *see also id.* at 1315 (defining "retail," *v,* as "to sell by small quantities, in broken lots or parcels, not in bulk, directly to consumer."); *Webster's II New Riverside University Dictionary* 1003 (1994) (defining "retail," *n,* as "the sale of goods in small quantities to consumers."); Unfair Sales Act, 73 P.S. § 212(4) (defining "retail sale" as "any transfer for a valuable consideration ... of title to merchandise to the purchaser for consumption or use other than resale or further processing or manufacturing"). As these definitions evince, the plain and ordinary meaning of a retailer is one who is selling some tangible *good* or *product* to an ultimate consumer. *Cf.* § 1471 (defining a principal, *inter alia,* as one who "engages in the business of manufacturing, producing, importing or distributing a *product* ...") (emphasis added). In this case, the subject of the Agreement between Admiral and UPC was mass transit seating—a product that clearly is not sold by SEPTA or any other transit agency to ultimate consumers. Contrary to Plaintiffs' argument, just because a transit agency sells something—in this case public transportation *services*—the agency is not *ipso facto* a retailer. To find otherwise would expand the term "retailer" beyond any workable or recognizable meaning.

Because we find that UPC did not contract with Admiral to solicit wholesale orders from retailers, UPC is not a "sales representative" under the CSRA. As a result, Defendants have failed to state a claim under that Act, and we will grant

Defendants' Motion with respect to Count I.

## B. *The WPCL*

Next, Defendant moves to dismiss Plaintiffs' attempted WPCL claim in Count II for failure to state a claim.[4] In doing so, Defendants make three separate arguments: (1) Egan cannot bring an action under the WPCL because he was not party to the Agreement; (2) no employer-employee relationship between Admiral and Egan exists; and (3) no wages are owed to Egan under the Agreement.

■ With respect to Defendants' first argument, we find that the dispute over the Agreement's proper interpretation, the contracting parties' intentions, and whether Egan was a party to the Agreement all involve genuine issues of material fact.[5] Viewing these facts in the light most favorable to Plaintiffs, we conclude that Plaintiff has stated a claim upon which relief could be granted. *See, e.g., Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (holding that motion to dismiss should only be granted when "it appears to a certainty that no relief could be granted under any set of facts which could be proved.").

Likewise, we find Defendants' second and third arguments in support of dismissing the WPCL claim unpersuasive. Based on the incomplete factual record before us, it is difficult to divine the exact nature of Egan's alleged employment relationship with Admiral and whether Egan may or may not be owed any payment for his work. Plaintiffs' allegations in the Amended Complaint and arguments in the Response do little to illuminate these signifi-

cant issues. However, given the liberal pleading standards in federal courts, and our obligation to view all facts in the light most favorable to Plaintiffs, it appears that Plaintiffs have at least stated the bare minimum necessary to survive a Rule 12(b)(6) motion. *See* Fed.R.Civ.P. 8; *Morse,* 132 F.3d at 906. Accordingly, we will deny Defendants' Motion to Dismiss with respect to the WPCL claim against Admiral in Count II.

## C. *Fraud*

Finally, Defendants argue that Plaintiffs' common law fraud claim in Count IV should be dismissed on grounds that Plaintiffs failed to plead the claim with sufficient particularity under Fed.R.Civ.P. 9(b) and failed to state a claim upon which relief can be granted. We disagree.

■ First, Defendants argue that Count IV does not meet the pleading standard of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This particularity requirement is intended "to provide defendants with notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984). There is no prescribed form in which Plaintiffs must provide this notice; while Rule 9(b) generally requires Plaintiffs to plead the "who, what, when, and where" of the alleged fraud, plaintiffs may provide specifics "in some alternative fashion." *United States v. Staff Builders, Inc.,*

---

4. We note that Count II appears to be brought only by Plaintiff Egan against Defendants. In addition, we note that Levine and Dugan were originally named as defendants in Count II. As explained *supra,* Count II will be dismissed with respect to Levine and Dugan for lack of personal jurisdiction. Therefore, we examine Count II only with respect to Egan's WPCL claim against Admiral.

5. In response to Defendants' argument that Egan is not a party to the Agreement, Plaintiff quotes the first paragraph of the Agreement, which states: "Admiral Tool & Mfg. Co. (Admiral) (the company) agrees as of January 7, 1993 to enter into an exclusive Sales Representation agreement with UNTIED PRODUCTS CORPORATION (UPC) (the agent) and Joe Egan its principal owner." (Am. Comp. at Ex. A).

Civ. A. No. 96–1969, 1999 WL 179745, at *4 (E.D.Pa. Mar. 4, 1999); *see also Seville,* 742 F.2d at 791 (noting that what is important under Rule 9 is that plaintiffs "inject[ ] some measure of substantiation into their allegations of fraud."). Moreover, despite Rule 9(b)'s heightened pleading requirement, courts should be "sensitive" to its application prior to discovery, and the Rule may be "relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997).

 In this case, Plaintiffs have adequately alleged a claim of fraud. Plaintiffs allege that Admiral fraudulently misrepresented its financial situation in an attempt to induce UPC to reduce its commission percentage (Am. Comp. at ¶ 74). In doing so, Plaintiffs indicate what the fraud was, when it occurred, who committed it, and how it adversely affected Plaintiffs. (*Id.* at ¶¶ 69, 70, 73). We conclude that these allegations, made prior to discovery, are more than sufficient for Rule 9(b) purposes.

Next, Defendants contend that Plaintiffs fail to state a claim because (1) Plaintiffs have pleaded a non-actionable "promissory fraud" and (2) the at-will nature of the Agreement bars any claims of fraud. Defendants correctly point out that a "breach of promise to do something in the future is not actionable in fraud." *Shoemaker v. Commonwealth Bank,* 700 A.2d 1003, 1006 (Pa.Super.1997) (citing *Krause v. Great Lakes Holdings, Inc.,* 387 Pa.Super. 56, 563 A.2d 1182, 1187 (1989)). However, as noted above, Plaintiffs allege, *inter alia,* that Defendants fraudulently misrepresented their financial condition to induce Plaintiffs to reduce their commission rate. Because this claim does not involve a future condition, intention, or promise on Defendants' part, it is not barred by the doctrine of promissory fraud. Nor do we believe the alleged at-will nature of the Agreement necessarily bars Plaintiffs' fraud claim. Although it may become evident after discovery that some or all of Plaintiffs' fraud claims are barred by the promissory fraud doctrine and/or by the nature of the Agreement itself, those matters are not appropriately disposed of at this preliminary stage. Accordingly, Defendants' Motion to Dismiss will be denied with respect to Count IV.

## CONCLUSION

For the foregoing reasons, we will grant Defendants' Motion to Dismiss or Alternatively Transfer in part and deny it in part. An appropriate order follows.